2010 WY 59

**Heather M. ZUPAN, Appellant (Defendant),**

v.

**John M. ZUPAN, Appellee (Plaintiff).**

No. S–09–0127.

Supreme Court of Wyoming.

May 7, 2010.

Representing Appellant: Wendy Sweeny, Worland, Wyoming.

Representing Appellee: Michael S. Messenger and Bobbi Overfield, Messenger & Jurovich, PC, Thermopolis, Wyoming.

Before GOLDEN, HILL, KITE, and BURKE, JJ., and TYLER, D.J.

TYLER, District Judge.

[¶ 1] Expiration of the parties' negotiated child custody agreement, incorporated into the 2004 Judgment and Decree of Divorce, resulted in the filing of a contempt petition, an unsuccessful mediation, a two-day trial in the district court, and this appeal. Heather M. Zupan ("Mother") appeals the post-divorce order in which the district court found that, with slight changes, the best interests of the parties' children were being served by the existing shared custody and visitation plan; that no grounds to modify the prior custody arrangement existed; and, that John M. Zupan ("Father") was not in contempt for violating the Judgment and Decree of Divorce ("Decree"). The district court did not abuse its discretion in any of its findings and there were no procedural errors committed by the trial court. We will affirm.

## ISSUES

[¶ 2] Mother states her appeal issues as follows:

I. Did the trial court commit error or abuse its discretion when it imposed a joint legal and shared custodial arrangement on the parties?

II. Did the trial court commit error or abuse its discretion in failing and refusing to consider evidence pertaining to the Appellee's relationship with his other children and grandchildren?

III. Did the trial court commit error or abuse its discretion in implementing a parenting plan which conditions a parent's custodial status on her continued residence in the same location as the other party?

IV. Did the trial court abuse its discretion by failing to find the Plaintiff/Appellee in contempt of Court?

Father characterizes the issues on appeal as follows:

I. Whether the trial court abused its discretion when it found it was in the children's best interests to continue with the parties' stipulated child custody agreement that had been in place since 2003.

II. Whether the trial court abused its discretion by failing to find the Appellee in contempt of court.

## FACTS

[¶ 3] The parties were married in June 1996. Two children were born to them during the marriage: NEZ, born in 1997, and CJMZ, born in 2000.

[¶ 4] Prior to completion of the divorce, the parties negotiated a Child Custody Agreement ("Agreement") which established joint legal custody with a shared custody and visitation arrangement. The Agreement provided that the parties would alternate residential custody of the children on an annual basis every July 15th. The shared custody plan began on November 1, 2003, and it expired upon its own terms on July 15, 2008. The Decree, filed on May 3, 2004, fully incorporated the parties' Agreement. Generally, the parties were able to make their custody and visitation arrangement work from its inception until near its expected natural termination.

[¶ 5] Built into the Agreement was a process aimed at resolving any disputes over custody when the Agreement expired: "At the end of the term of this agreement, if the parties are unable to agree regarding custodial arrangements after July 15, 2008, they will submit the matter to mediation before returning to the Court." Anticipating that the custody agreement would end in July 2008, Mother contends that she contacted Father about setting up mediation two different times—once in 2005 and again in December 2007.

[¶ 6] On February 12, 2008, Mother filed her Verified Petition for Order to Show Cause ("contempt petition") asserting that Father should be found in contempt of court for disobeying the Decree, mainly due to his failure to engage in the mediation process as had been requested. The Order to Show Cause ("OTSC") required Father to appear before the district court in early May. At his initial hearing, Father denied violating the terms of the Decree and he requested a hearing.

[¶ 7] Mediation was scheduled pursuant to a stipulated order filed before Father's appearance on the OTSC. The parties and their attorneys engaged in mediation on June 5th, but it was not successful in resolving their custody disputes. The next day, after a telephone hearing "upon the failure of the parties to successfully mediate this matter," the district court entered an Order Granting Temporary Custody and Setting Notice giving Mother temporary custody of the children, subject to visitation by Father, until a determination could be made after a trial.[1] Specifically, the district court directed that "all pending matters, being the [Mother's] Petition for Order to Show Cause and determination for future custodial arrangements for the minor children shall come before the Court" for trial.

[¶ 8] A two-day trial was held on September 4 and 5, 2008.[2] On September 9, 2008, the trial court issued its Decision Letter. The Order Denying Contempt and Establishing Custody was filed on March 9, 2009.

[¶ 9] In essence, the district court found that the best interests of the parties' children were being served by the existing shared custody and visitation plan, with some modifications; that no grounds to modify the prior custody arrangement had been shown; and, that Father was not in contempt for violating the Decree. It is the Order Denying Contempt and Establishing Custody from which this appeal ensued.

## DISCUSSION

### Standard of Review—Custody and Visitation Modification

■ [¶ 10] In the absence of clear and convincing evidence to the contrary, an agreement made and entered into, in anticipation of a divorce which has been incorporated or adopted by reference into a decree, is presumed to merge into the divorce decree and will no longer be in effect. *Pauling v. Pauling*, 837 P.2d 1073, 1078 (Wyo.1992) (citing *Phillips v. Phillips*, 93 Idaho 384, 387, 462 P.2d 49, 52 (1969)); *Witowski v. Roosevelt*, 2009 WY 5, ¶ 23, 199 P.3d 1072, 1078–1079 (Wyo.2009). In the

---

1. By the time of trial, Mother had physical custody of the parties' children for approximately 14 consecutive months.

2. Presiding District Court Judge Gary P. Hartman retired on July 31, 2008. The case was then assigned to the Honorable Robert E. Skar. Judge Skar was subsequently disqualified since a close family member was designated to testify as a witness at the trial of this case. The case was then assigned to the Honorable Dan Spangler pursuant to an Order of Temporary Assignment.

present case, clear and convincing evidence shows that the parties intended that the terms and provisions of their Agreement would survive merger. The district court's findings and orders in the Decree support the parties' intent that the custody and visitation provisions in the Agreement would survive merger. As a result, when the parties were unable to agree regarding custodial arrangements after the Agreement's expiration date, it became necessary for the district court to determine custody and visitation.

[¶ 11] Statutorily, to modify an existing custody and visitation order, there must be "a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a)." Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2009). "The party seeking a modification of the custody provisions of a divorce decree has the burden of showing that a material and substantial change of circumstances has occurred, after the entry of the initial decree, and that modification is in the best interests of the children." *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002) (quoting *Clark v. Alexander*, 953 P.2d 145, 150 (Wyo.1998)); *see Leitner v. Lonabaugh*, 402 P.2d 713, 718–719 (Wyo.1965).

[¶ 12] The trial court has discretion in determining custody and visitation issues to be in the best interests of the children:

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink [v. Fink ]*, 685 P.2d [34,] 36 [ (Wyo.1984) ].

*Pace v. Pace*, 2001 WY 43, ¶ 9, 22 P.3d 861, 865 (Wyo.2001) (quoting *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998)); *Testerman v.*

*Testerman*, 2008 WY 112, ¶ 8, 193 P.3d 1141, 1144 (Wyo.2008). We apply the same standard of review regarding a trial court's determinations involving modification of custody and visitation arrangements. *Fergusson*, ¶ 9, 45 P.3d at 644; *Morris v. Morris*, 2007 WY 174, ¶ 5, 170 P.3d 86, 88 (Wyo.2007).

[¶ 13] "The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children." *Pace*, ¶ 11, 22 P.3d at 865 (quoting *Reavis*, 955 P.2d at 431). Such discretion "encompasses one of the most difficult and demanding tasks assigned to a trial judge." *Reavis*, 955 P.2d at 431. "Ultimately, the 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children.' " *Pace*, ¶ 11, 22 P.3d at 865 (quoting *Leitner*, 402 P.2d at 720).

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision.... Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Buttle v. Buttle*, 2008 WY 135, ¶ 15, 196 P.3d 174, 178 (Wyo.2008) (quoting *Eickbush v. Eickbush*, 2007 WY 179, ¶ 9, 171 P.3d 509, 511 (Wyo.2007)).

[¶ 14] In every case, the district court must base its child custody determinations in the best interests of the children using the factors enumerated in Wyo. Stat. Ann. § 20–2–201(a). No single factor is determinative. *Hayzlett v. Hayzlett*, 2007 WY 147, ¶¶ 9, 10, 167 P.3d 639, 642 (Wyo.2007). "Every case ... requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution in the best interests of the children in that family." *Pace*, ¶ 13, 22 P.3d at 866 (quoting *Reavis*, 955 P.2d at 431). The district court must articulate those "fac-

tors which were considered and how those factors support its conclusions." *Pace,* ¶ 13, 22 P.3d at 866 (quoting *Reavis,* 955 P.2d at 431). "To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination ... so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision." *Reavis,* 955 P.2d at 431–432 (quoting Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L.Rev. 635, 665–66 (1971)).

[¶ 15] "The court shall order custody in well defined terms to promote understanding and compliance by the parties. Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody." Wyo. Stat. Ann. § 20–2–201(d). Similarly, there is statutory discretion for a district court to order visitation, "in enough detail to promote understanding and compliance," as "it deems in the best interests of each child." Wyo. Stat. Ann. § 20–2–202(a)(i).

[¶ 16] Mother challenges the sufficiency and weight of the evidentiary findings, to some degree, in every issue presented by her on appeal. "In reviewing a challenge to the sufficiency of the evidence, we accept the evidence of the successful party as true and give all favorable inferences to that evidence." *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994) (citing *Hill v. Zimmerer,* 839 P.2d 977, 981 (Wyo.1992)). "We leave out of consideration entirely the conflicting evidence of the unsuccessful party." *Cranston,* 879 P.2d at 351 (citing *Kadrmas v. Valley West Homeowner's Ass'n,* 848 P.2d 826, 828 (Wyo.1993) and *Hill,* 839 P.2d at 981).

**The District Court's Determinations as to Custody, Visitation and the Residency Restriction**

[¶ 17] In this case, the parties' Decree which assimilated their negotiated Agreement provided, in relevant part: (1) they would "enjoy joint legal custody and shared physical custody of the minor children of the parties, beginning on November 1, 2003, and ending on July 15, 2008;" (2) they would "alternate annual residential custody until the end of this agreement;" (3) the non-custodial parent would have visitation on alternating weekends and two evenings per week; (4) they would "alternate custody during the holidays of Thanksgiving, Christmas, and Easter;" (5) they would "be flexible to arrange a makeup weekend or evening for those missed because of these holidays;" and, (6) Mother would maintain "a residence during the term of this agreement in Thermopolis or within five miles of Thermopolis" (although it was acceptable if Mother "moves from Thermopolis during her non-residential years").

[¶ 18] After trial, the district court ordered, in pertinent part, as follows: (1) "[t]hat it is in the best interests of the minor children to continue with the custody arrangement that has been in place for the minor children for the previous five years subject to slight modification;" (2) "[t]hat custody of the minor children shall continue to be joint legal custody with shared physical custody alternating on a yearly basis;" (3) that "[t]he non-residential parent shall have visitation on alternating weekends and two evenings per week;" (4) that "[t]he parties shall alternate custody during the holidays of Thanksgiving, Christmas, and Easter;" (5) that "[t]he parties agree to be flexible to arrange a makeup weekend or evening for those missed because of these holidays;" (6) that "[Father] shall have the children each Labor Day weekend and [Mother] shall have the children on each Memorial Day weekend;" and, (7) "[t]hat the residency provision set forth in the prior agreement is hereby lifted and any issues of residency of the parents would need to be addressed through a future modification proceeding."

**A.  The District Court's Determinations Concerning the Shared Custody Arrangement**

[¶ 19] Wyoming statute specifically allows a district court to fashion a custody plan to "include any combination of joint, shared or sole custody" which it finds to be in the best interests of the children. Wyo. Stat. Ann. § 20–2–201(d). "Shared custody" arrangements are not preferred,

however. *Reavis,* 955 P.2d at 432; *Eick-bush,* ¶ 11, 171 P.3d at 512; *Buttle,* ¶ 31, 196 P.3d at 181; *Testerman,* ¶ 15, 193 P.3d at 1145; *Parris v. Parris,* 2009 WY 44, ¶ 19, 204 P.3d 298, 304 (Wyo.2009). To validate a shared custody plan, the record must show that, in determining the best interests of the children, "a comprehensive evaluation of all relevant factors occurred prior to determining custody." *Id.; Buttle,* ¶ 31, 196 P.3d at 181; *Pace,* ¶ 17, 22 P.3d at 867. The evidence presented by the parties and the trial court's findings must adequately reflect that a shared custody plan favors stability in the children's surroundings and that it is in the children's best interests. *Buttle,* ¶ 36, 196 P.3d at 182.

[¶ 20] Overall, Mother asserts that the trial evidence and testimony demonstrated that continuing with the parties' shared custody arrangement will not promote stability in the children's milieu and is contrary to the children's best interests—particularly with regard to the parties' youngest child, CJMZ. Mother claims that the district court erred or abused its discretion in concluding that "the children are doing well under the custody arrangement that has been followed and their lives would not be improved by changing the procedure" and "it would be in the children's best interests to continue with the custody and visitation schedule outlined in the earlier agreement."

[¶ 21] More specifically, Mother insists that the shared custody arrangement does not work because the parties are unable to effectively communicate or cooperate on matters relating to the children's welfare. In particular, Mother cites to select testimony and evidence in the record which she believes establishes that Father intimidates her, that he is domineering, and that he does not permit her to parent without interference. Father counters Mother's arguments by noting that Mother failed to cite any specific occasion where the parties' failure to communicate or cooperate resulted in any material breakdown of the shared custody arrangement in five years. Moreover, Father points to the report of the Guardian Ad Litem which indicates that the parties communicate well with each other. After considering all of the evidence, the district court expressly found that "[t]he parents communicate well with the children and reasonably well with each other."

[¶ 22] Next, Mother argues that Father does not act in ways to promote the children's best interests when the children are in his care. She refers to the fact that Father has a dog in his home despite his awareness that CJMZ suffers from allergies. Further, Mother claims that Father failed to note CJMZ's allergies on school records, thereby placing the child's safety and welfare in jeopardy. Also, Mother criticizes Father for his failure to procure necessary reading glasses for CJMZ, while the child is in his care. The record shows that, while CJMZ has been diagnosed with certain allergies, CJMZ has not had any allergic reactions to the dog. The child's allergic reactions have subsided over time. CJMZ's allergy condition had long since been updated in the school files. CJMZ's reading glasses usually remain at school so they are not forgotten at home, and there has been no denial of appropriate vision aids by Father. We find no abuse of discretion in the district court's weighing of this evidence.

[¶ 23] Mother also contends that the shared custody arrangement has left the children with uncertainty and instability. In addition to Mother's subjective view concerning this contention, she claims that the testimony of the children's care provider and their teacher bolsters this conclusion. Mother asserts that CJMZ needed special education services when in the custody of Father, but that those services were no longer necessary when the child was subsequently in her custody. She argues that this proves that CJMZ is particularly sensitive to the instability of the custody situation while in the custody of Father. Father maintains that the shared custody and visitation arrangement has worked well for the children, chiefly due to the length of custody, coupled with the historical fact that both parents reside in the same municipality. The evidence in the record reflects that there was uncertainty and instability noted when the shared custody plan first began in 2003, but the children's care provider and their teacher

readily agreed that after the initial adjustment to the custody arrangement, the children appear to have settled into a stable routine. Both witnesses indicated that alternating custody on an annual basis has aided in the children's ability to adjust. The educator acknowledged that CJMZ did utilize special education services when in the custody of Father. However CJMZ has consistently benefited from additional educational support, even though such support was not characterized as special education services.

[¶ 24] Father's previous physical aggression was raised by Mother as a factor to which she claims that the district court did not attribute appropriate weight in determining the best interests of the parties' children under the shared custody and visitation plan.[3] Mother relates that Father reportedly physically abused one of his daughters from a prior relationship when she was an early teenager. This incident purportedly occurred in 1992—approximately four years before the marriage of these parties. Mother recounted an incident in 1997 when Father "hit the wall or door" near Mother's head and he would also "shove" her with "his finger a lot in the chest." The next stated incident involving physical aggression by Father occurred in approximately 2000 when he grabbed NEZ by the shoulder and shook the child for accidentally dropping a video camera. Mother cites to an incident in 2002 when Father "smacked" CJMZ, who was then age two, because the child was biting Father's leg. In October 2003, Mother described that Father got angry, twisted her arm, and shoved her into a door. Mother further claims that Father was verbally abusive toward her and the children during the marriage. The district court undoubtedly considered this evidence as a factor in its determinations in specifically finding that, "[Father] was physically aggressive on a few occasions several years ago. This is not a current problem." Implicit in its findings,

the district court acknowledged that all of the incidents cited by Mother occurred before the divorce was completed in 2004, and there were no more recent instances of similar conduct by Father.

[¶ 25] Finally, Mother argues that the trial court failed to sufficiently acknowledge that she had custody of the children for the 14 months immediately preceding the trial, which distorted the true picture of the effects of the annual rotation of custody upon them, since the children were then "well-behaved, well-adjusted and performing at above-average levels." Nevertheless, the record supports the district court's conclusion, "[t]hat the children are doing well under the custody arrangement that has been followed and their lives would not be improved by changing the procedure." The district court did not ignore the fact that Mother had custody for the previous 14 months. It may have given that fact less weight than Mother would like, but Mother has not demonstrated that was an abuse of discretion.

[¶ 26] Mother fundamentally disagrees with the district court's determination "to continue with the custody arrangement that has been in place for the minor children for the previous five years subject to slight modification." Instead, she steadfastly maintains that she should be granted sole physical custody of the children, subject to visitation rights by Father. To achieve this relief, Mother had the burden of showing the district court that there was "a material change in circumstances" since entry of the Decree and "that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a)." Wyo. Stat. Ann. § 20–2–204(c). *See Leitner*, 402 P.2d at 718–719; *Fergusson*, ¶ 9, 45 P.3d at 644; *Clark*, 953 P.2d at 150. Most of the testimony and evidence relied upon by Mother which may tend to support her challenges to the appro-

---

3. In cases where "spousal abuse" or "child abuse" is present, the trial court is required to consider such evidence "as being contrary to the best interest of the children." Wyo. Stat. Ann. § 20–2–201(c). In those cases, the trial court is mandated by statute to fashion custody and visitation orders to provide for the best interests of the children and to protect the spouse and chil-

dren. *Id.* "However, in determining custody in the best interest of a child, evidence of spousal abuse is only one of the factors district courts are required to consider." *Buttle*, ¶ 23, 196 P.3d at 180. Thus, evidence of spousal abuse or child abuse "must be considered along with all of the other factors." *Id.*, ¶ 25, 196 P.3d at 180.

priateness of a shared custody and visitation plan pre-dates entry of the Decree. The record is accurately summarized by the district court's finding, "[t]hat if this is viewed as a modification action, there has been no substantial change in circumstances." Mother failed in her burden to demonstrate "a material change in circumstances" subsequent to implementation of the shared custody and visitation arrangement which warrants modification.

[¶ 27] The district court's findings reveal that all relevant factors were thoughtfully analyzed and carefully weighed in discerning the best interests of the children before arriving at its conclusions. Accepting the evidence of Father as true, giving all favorable inferences to that evidence, and leaving out of consideration entirely the conflicting evidence of Mother, the record and the trial court's findings fully sustain the overall conclusion that the shared custody plan favors stability in the children's environment and that it is in the children's best interests. *See Cranston*, 879 P.2d at 351; *Buttle*, ¶ 36, 196 P.3d at 182. The district court did not err procedurally and it did not abuse its discretion in its determinations.

### B.  The District Court's Consideration of Father's Relationships with His Other Children and Grandchildren

[¶ 28] Mother refers to a recent opinion where a district court's consideration of a parent's "past mistakes" made during a child's five and a half year lifetime in determining the best interests of the child in a custody modification proceeding was upheld on appeal. *JT v. KD*, 2008 WY 104, ¶ 19, 192 P.3d 969, 973 (Wyo.2008). Relying upon this precedent, Mother argues that the district court in this case should have taken more fully into account the evidence in the record indicating that Father has been unable to maintain good relationships with his older children or his grandchildren to more accurately assess the best interests of NEZ and CJMZ. Mother reasons that had the trial court properly considered this evidence, it could not have concluded that Father possesses the parenting skills qualifying him as a fit and competent parent for NEZ and CJMZ, with the ability to strengthen the parent-child relationship. In this regard, Mother points to the evidence of Father's past aggressiveness with his daughter from a prior relationship and his overall "inability to deal with teenage children as was historically the case with his other children."

[¶ 29] Father initially responds that Mother's contentions are factually unsupported. Father refers to the conflicting evidence in the record concerning the reasons for the problems in the relationships he has had with his older children. Father's eldest daughter, now well into her 30's, testified that she has a "really good relationship" with her father and that they love each other. The daughter attributed much of the breakdown in the relationships that Father may have had with her and her siblings to Father's former spouse who caused them to move out of Father's home when they were teenagers. Father distinguishes the egregious nature of the parent's "past mistakes" in *JT* as being much different than any "past mistakes" that Mother claims Father made in his relationships with his older children or grandchildren. Father cautions that a parent's entire life, especially events occurring before the birth of the children *sub judice*, should not be open to scrutiny by a trial court. He suggests that a better approach would be to limit an inquiry into "past mistakes" to the lifetimes of children who are the focus of the trial court's determinations as to their best interests.

[¶ 30] The district court is statutorily required to determine the best interests of the children in fashioning a custody and visitation order. Wyo. Stat. Ann. § 20–2–201(a). To comply with this mandate, the trial court "shall consider, but is not limited to," the ten factors enumerated in the statute. *Id.* Among the factors required to be considered are, "[a]ny other factors the court deems necessary and relevant." Wyo. Stat. Ann. § 20–2–201(a)(x). Hence, the only limitation upon what a district court may consider in determining the best interests of a child is such "other factors the court deems necessary and relevant." *Id. See Selvey v. Selvey*, 2004 WY 166, ¶ 18, 102 P.3d 210, 215 (Wyo. 2004).

[¶ 31] Although the district court did not make any specific findings concerning Father's relationships with his other children and grandchildren in this case, the record shows that the trial court accepted the testimony on this issue presented by both parties. Further, the district court's findings, *in toto*, lead to the conclusion that this evidence was obviously considered and given appropriate weight. The district court did not commit any procedural error and it did not abuse its discretion as to the consideration and weight given to Father's relationships with his older children and grandchildren.

### C. The District Court's Determination of the Travel or Relocation Restriction

■ [¶ 32] In the parties' negotiated Agreement, as ratified and included into the Decree, Mother and Father agreed to the following residency provision: "[Mother] agrees to maintain a residence during the term of this agreement in Thermopolis or within five miles of Thermopolis, although [Father] has no objection if [Mother] moves from Thermopolis during her non-residential years."

[¶ 33] At the trial, Mother sought to have the residency provision removed because it adversely impacted her constitutional right to travel or relocate. *Watt v. Watt,* 971 P.2d 608, 615–616 (Wyo.1999); *Love v. Love,* 851 P.2d 1283, 1286–89 (Wyo.1993); *Gurney v. Gurney,* 899 P.2d 52, 55 (Wyo.1995); *Resor v. Resor,* 987 P.2d 146, 151 (Wyo.1999); *Testerman,* ¶ 18, 193 P.3d at 1146; *Harshberger v. Harshberger,* 2005 WY 99, ¶ 12, 117 P.3d 1244, 1250–51 (Wyo.2005). After trial, the district court ordered: "That the residency provision set forth in the prior agreement is hereby lifted and any issues of residency of

the parents would need to be addressed through a future modification proceeding."

[¶ 34] Mother asserts that, despite the court's removal of the residency provision, her right to relocate is nonetheless violated, since the shared custody arrangement still provides for visitation by the non-custodial parent on alternating weekends and for two evenings per week. She claims that this visitation provision "exerts pressure" upon her to remain in the locality in derogation of her rights because relocation is not recognized as a change in material circumstances warranting modification of a custody order.[4] We disagree with Mother's assertion.

[¶ 35] There is nothing in the shared custody and visitation plan or in the order lifting the residency requirement which unconstitutionally requires, or "exerts pressure" upon, either parent to reside in the same locality. Moreover, Mother is incorrect in her contention that Wyoming case law prevents judicial review of a request to modify a custody and visitation order after a parent relocates:

> To summarize, our precedent is quite clear that relocation, by itself, cannot be a substantial and material change in circumstances sufficient to justify reopening a custody order. That precept is also applicable to any factors that are derivative of relocation. What Mother has failed to acknowledge in her argument, however, is that our precedent does not preclude the district court from considering the effects of relocation on the children so long as there is some other circumstance that is "sufficiently deleterious to the welfare of the children that by itself ... would serve as a substantial and material change in circumstances even in the absence of a relocation." *Watt,* 971 P.2d at 617; *see Gurney,* 899 P.2d at 55 (Where a custody order was properly reopened because both

---

**4.** The record is bereft of any indication that Mother presented this issue in this manner to the district court at trial.

In general, we do not consider claims raised for the first time on appeal. *See Davis v. City of Cheyenne,* 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004). We "take[ ] a dim view of a litigant trying a case on one theory and appealing it on another.... Parties are bound by the theories which they advanced below." *WW Enterprises, Inc. v. City of Cheyenne,* 956 P.2d

353, 356 (Wyo.1998). We have in the past recognized two exceptions to this rule: when the issue raises a jurisdictional concern or when the issue concerns such a fundamental nature of fairness that it must be considered. *Davis,* ¶ 26, 88 P.3d at 490.

*Anderson v. Board of County Comm'rs of Teton County,* 2009 WY 122, ¶ 15, 217 P.3d 401, 405 (Wyo.2009). Since Mother's claim implicates a fundamental right, we will address it.

parties asserted that joint custody was not working, district court could have reasonably concluded that factors derivative of the relocation could have contributed to parties' inability to agree and communicate.). Furthermore, our cases stress that the rule set forth in *Love* and its progeny is predicated upon the motivation for the relocation being in good faith. *Love*, 851 P.2d at 1288–89 ("So long as the court is satisfied with the motives of the custodial parent in seeking the move ... removal should be granted."); *Watt*, 971 P.2d at 614 ("*Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the non-custodial parent, is not a substantial and material change in circumstances.").

*Harshberger*, ¶ 12, 117 P.3d at 1250–1251.

[¶ 36] The district court properly removed the residency provision from the shared custody plan. The district court was justified in including visitation in the custody arrangement as being in the children's best interests. No abuse of the trial court's discretion occurred and it committed no procedural errors.

## Standard of Review—Contempt

[¶ 37] The standard of review for contempt proceedings involving child custody matters is well-developed:

> The standard of review enunciated in other child custody and domestic relations contempt cases is applicable to this matter. *Crites v. Alston*, 837 P.2d 1061, 1066 (Wyo. 1992).
>
> > In *Goss v. Goss*, 780 P.2d 306, 313 (Wyo. 1989), we said that "[w]e will not disturb the decision of the trial court ... in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *See also Deen v. Deen*, 774 P.2d 621 (Wyo.1989) and *Fanning v. Fanning*, 717 P.2d 346 (Wyo.1986).
>
> *Id.; see also Rogers v. Rogers*, 973 P.2d 1118, 1121 (Wyo.1999). "Judicial discretion is a composite of many things, among which are conclusions drawn from objec-

tive criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, [751] (Wyo.2001); *see also Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). We must determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Belless*, ¶ 6.

*Erhart v. Evans*, 2001 WY 79, ¶ 11, 30 P.3d 542, 545 (Wyo.2001); *McElwain v. McElwain*, 2005 WY 147, ¶ 6, 123 P.3d 558, 561 (Wyo.2005). If the record includes sufficient evidence to support the district court's exercise of discretion, we uphold its decision. *In re KJD*, 2002 WY 26, ¶ 21, 41 P.3d 522, 527 (Wyo.2002).

## The District Court's Denial of Mother's Contempt Petition

[¶ 38] Mother asserts that the district court erred in denying her contempt petition after finding that she failed to meet her burden of proving that Father was in contempt for violating the Decree in the following respects: (1) Father's refusal to communicate with Mother regarding the provision in the agreement requiring that the parties submit to mediation concerning custody and visitation determinations after the custody agreement expired or to participate in mediation in good faith; (2) Father's failure and refusal to allow make-ups of lost visitations, especially during Memorial Day and Labor Day holidays; and, (3) Father's instruction to school personnel to not communicate with Mother concerning the children.

[¶ 39] Mother first assigns error or an abuse of discretion by the district court in finding that Father participated in mediation in good faith and that he did not willfully violate the Decree. Mother contends that in 2005, and again in December 2007, she directly contacted Father to inquire about setting up the mediation process in anticipation of the expiration of the shared custody plan. Mediation was not addressed between them prior to February 12, 2008, when Mother filed her contempt petition. Father could not have violated the Decree before Febru-

ary 12, 2008, since the unambiguous intent of the parties was, "[a]t the end of the term of this agreement, if the parties are unable to agree regarding custodial arrangements after July 15, 2008, they will submit the matter to mediation before returning to the Court."

[¶ 40] The OTSC issued on February 12, 2008, required Father to appear before the district court on May 5, 2008. The contempt petition and the OTSC were served upon Father on February 13, 2008. Pursuant to a stipulated court order filed before Father made his initial appearance on the OTSC in May, mediation was ultimately scheduled for, and held on, June 5, 2008.

[¶ 41] Although the mediation process was not successful, the trial court later found that Father participated in good faith. Adding weight to the trial court's finding that Father participated in mediation in good faith were the following facts: (1) Father nominated a mediator; (2) Father stipulated to a court order scheduling mediation prior to his appearance on the OTSC; (3) Father stipulated to the order scheduling the mediation to take place over one month before the expiration of the shared custody plan; (4) Father was represented by counsel before, and during, the mediation; and, (5) Father participated in mediation even though the shared custody arrangement had not yet expired.

[¶ 42] Next, Mother disputes that the record supports the district court's finding that Father did not violate the Decree by failing and refusing to allow make-ups of lost visitations, especially during Memorial Day and Labor Day holidays. To the contrary, the record is replete with testimony by both parties that each party has accommodated extra visitation times to allow for the circumstances and for the benefit of the children. Specifically, Father allowed Mother's requests for extra visitation when her family came to town; Father left the children with Mother during the day in summer while he was working, instead of leaving the children with a childcare provider, because she was off work in the summer; and, there were other infrequent requests by Mother to have the children during Father's visitation periods which he allowed.

[¶ 43] The record highlighted an unintended consequence resulting in some lost visitation by Mother because the weekends of Memorial Day and Labor Day were not considered holidays under the original shared custody and visitation plan. The district court did not view this consequence as rising to the level of contemptuous conduct on the part of Father due to the structure of the underlying custody and visitation plan. Instead, the district court modified the custody arrangement to include provision for splitting those holiday weekends between the parties.

[¶ 44] Mother's last contention that Father engaged in conduct violating the Decree relates to her claim that he instructed school personnel to not communicate with Mother concerning the children. The related testimony and evidence shows that in October 2007, one of the children's teachers contacted Mother to request a special meeting about the child's educational issues. The teacher specifically asked Mother if she would notify Father about the meeting, and Mother agreed to do so. For unknown reasons, Father was not informed of the meeting until after it occurred. He then sent the teacher an email which stated, "I would like to reiterate my request for notification of both [Mother] and I when you or any other concerned party deems it necessary for a dialogue with or about either [CJMZ] or [NEZ]." The affected teacher testified that this email was not interpreted as an attempt by Father to restrict or interfere with any communications about the children with Mother. In actuality, there was no impact upon the free flow of communication between Mother and the teacher. The teacher merely understood this email to be a request by Father to be specifically included, along with Mother, in matters pertaining to the educational issues involving the parties' children. The district court concluded that Father did not forbid school personnel from communicating with Mother.

[¶ 45] In sum, the record contains ample support for the findings of the trial court that: (1) Mother did not meet her burden of proof in showing that Father was in contempt for disobeying the Decree; (2) Father

had not repeatedly refused to allow Mother to recover lost time with the children, and each party had allowed the other extra time in accordance with the best interests of the children; (3) Father had not forbidden school personnel from communicating with Mother, he had only asked that he be included in any major teacher conference; (4) neither party had willfully denied custodial nor visitation rights of the other; (5) Father had participated in mediation in good faith; and, (6) there had not been willful violations of court orders by either party.

## CONCLUSION

[¶ 46] In this appeal, Mother invites this Court to reweigh the testimony and evidence adduced at trial. We decline to do so, especially since Mother has not articulated the existence "of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion" by the trial court. *See Goss,* 780 P.2d at 313.

[¶ 47] We affirm the Order Denying Contempt and Establishing Custody.