KAUTZ, Justice.
*1263 [¶1] The Appellant, Colleen M. Meiners, appeals the district court's order enforcing the terms of her divorce decree at the request of her late ex-husband, Theodore "Theo" Meiners' estate.[1] Colleen argues the district court should have modified the terms of the divorce settlement agreement and the resulting divorce decree, failed to apply laches, and failed to award her storage fees and mortgage contributions. We affirm.
ISSUES
[¶2] Colleen raises the following issues in her appeal:
1. May parties to a Divorce Decree under certain circumstances modify the terms of their settlement agreement which was merged into the Divorce Decree?
2. Did the District Court err when it refused to follow the law as set forth by the Wyoming Supreme Court in Acton v. Acton [,] 2017 WY 151, 406[ ] P.3d 1279 (Wyo. 2017) ?
3. Can the Doctrine of Laches be asserted as a defense to the enforcement of a provision in the the [sic] property division in a Divorce Decree?
4. Did the District Court err by not giving [Colleen] credit for rental of storage space by Theodore Meiners?
5. Did the District Court err when it denied [Colleen] contribution from the Estate of Theodore Meiners for mortgage payments that were made by Appellant Colleen Meiners, from the date Appellant Colleen Meiners and Theodore Meiners became tenants in common?
FACTS
[¶3] This matter is before the Court for a third time. In Meiners v. Meiners , 2016 WY 74, 376 P.3d 493 (Wyo. 2016), we gave a thorough rendition of the facts, relevant portions of which are:
Theodore (Theo) Meiners and Colleen Meiners (collectively "the Meiners") married in 1989. They each had one child from prior relationships, and they had one child together who was born in 1989. In 2001, the Meiners separated, and in 2002 they executed a Child Custody and Property Settlement Agreement (Divorce Agreement). The Divorce Agreement gave Colleen Meiners primary custody of the couple's child and Theo Meiners reasonable visitation. Theo Meiners was to pay child support in the amount of $ 375.00 per month until the child reached the age of majority in April 2007. The agreement specified that Theo Meiners would be entitled to all his personal property being stored in the garage of the couple's residence and that he would remove that property by January 23, 2002. With respect to the couple's real property, which consisted only of their residence, the Divorce Agreement provided:
The parties['] real property located at 25 Aspen Drive will be sold to Wife under the following terms and conditions:
a. The purchase price shall be one half the fair market value as determined by an independent appraiser agreed to by the parties, which has been determined to be $ 285,000.00, less six percent (6%) sales commission, and less all outstanding taxes, mortgages and liens on the property;
b. Wife shall pay to Husband one half the net equity in the property as of August 30, 2001. Payment shall be due and payable when the property is sold or upon the emancipation of the parties' minor son, [AM].
c. There shall be no monthly payments, however the purchase price shall accrue interest at the rate of six percent (6%) simple interest per annum.
d. Wife shall receive as a credit toward the purchase price the sum of $ 2,460.00 which represents back child support owed by Husband as of August 30, 2001.
e. Husband shall execute all documents necessary to effect a transfer of title and ownership to Wife, as her sole and separate property, as may be required by any governmental entity, financial institution, or lender;
*1264 f. Wife shall execute all documents necessary to protect Husband's security interest in the real property located at 25 Aspen Drive.
After executing the Divorce Agreement, the Meiners had second thoughts about divorcing and did not file the Divorce Agreement in district court, though a divorce complaint had already been filed with the court. Between 2001 and 2007, Theo Meiners resided part of the year in Alaska, where he had a heli-skiing business, and part of the year in Jackson with Colleen Meiners. In 2007, the district court notified the Meiners that their divorce complaint would be dismissed for lack of prosecution if no action was taken on the matter, and the Meiners then decided to proceed with their divorce. On July 20, 2007, the Divorce Agreement was filed with the court, and on that same day, the district court entered a Decree of Divorce.[2]
After the divorce decree was entered in 2007, the Meiners continued to have a good relationship and live as they had prior to their divorce, with Theo Meiners residing part of the year in Alaska and part of the year in Jackson with Colleen Meiners. In 2010, the Meiners refinanced the residence at 25 Aspen Drive, executing the necessary documents as husband and wife. Neither Theo Meiners nor Colleen Meiners followed the terms of the Divorce Agreement before or after their divorce.
On September 20, 2012, Theo Meiners died, and on November 7, 2012, his daughter, Alexandra Meiners, was appointed as personal representative of his estate. On October 7, 2013, Alexandra Meiners, on behalf of the estate, filed a complaint against Colleen Meiners alleging claims of breach of contract, unjust enrichment, enforcement of divorce decree, and slander of title. The breach of contract claim sought enforcement of the Divorce Agreement and in particular the agreement's real property division requiring Colleen Meiners to pay Theo Meiners one-half the net equity in the property located at 25 Aspen Drive, plus interest, based on the property's 2001 appraised value.
On November 7, 2013, Colleen Meiners filed an answer and counterclaim. She alleged numerous affirmative defenses, including laches and waiver, and asserted a counterclaim for breach of contract by which she sought damages for Theo Meiners' breach of the Divorce Agreement. Specifically, Colleen Meiners alleged that Theo Meiners breached the Divorce Agreement by: failing to remove his personal items from the property located at 25 Aspen Drive; failing to pay child support; failing to pay any portion of the mortgage on the property located at 25 Aspen Drive; and failing to pay his portion of the couple's debt.
Id ., ¶¶ 3-7, 376 P.3d at 494-95.
[¶4] The parties filed motions for summary judgment, and the district court granted summary judgment in favor of Alexandra on her slander of title claim, although it did not determine any damages she had suffered on that claim. Id ., ¶ 9, 376 P.3d at 495. The court also granted summary judgment to Alexandra on her claim to fifty percent of the equity in the real property less the deductions in the divorce decree but awarded less interest than requested. Id . The court denied Colleen's counterclaims to recover credit card payments, unclaimed child support, and laches, but granted judgment in her favor on her claims for mortgage contributions and costs of storing Theo's personal property. Id. Alexandra appealed the district court's order; however, we dismissed the appeal because it did not fully resolve the case, leaving unanswered questions about Alexandra's unjust enrichment claim and damages from the slander of title claim. Id ., ¶ 10, 376 P.3d at 496.
[¶5] The parties stipulated to an order dismissing without prejudice Alexandra's claims for unjust enrichment and slander of title and certifying the summary judgment order as final under Wyoming Rule of Civil Procedure 54(b). Alexandra again appealed the order, and we again determined the parties' claims were not yet fully and finally resolved. Id ., ¶ 12, 376 P.3d at 496. Specifically, the summary judgment order left it to the *1265 parties to determine the amount owed by the estate to Colleen for mortgage contributions and the amount owed by Colleen for Theo's half interest in the property. Id. , ¶ 18, 376 P.3d at 497. Although we dismissed the appeal, we did offer guidance for the district court on remand. We explained the threshold question that must be answered in this matter is whether the divorce agreement merged into the divorce decree or continued to exist as a separate enforceable agreement. Id ., ¶ 26, 376 P.3d at 499. We also recognized our well-established rule that:
when, in the absence of clear and convincing evidence to the contrary, the parties enter into a settlement agreement in contemplation of divorce and the district court's divorce decree incorporates or adopts by reference that agreement, the agreement is presumed to merge into the decree and will no longer be given effect. Our decision does not affect a trial court's authority to revise a divorce decree concerning the care, custody, or maintenance of children or alimony, nor does our decision affect a trial court's lack of authority to modify a divorce decree concerning property division.
Id ., ¶ 25, 376 P.3d at 498-99 (quoting Pauling v. Pauling , 837 P.2d 1073, 1078 (Wyo. 1992) ).
[¶6] On remand, the district court held a bench trial where it received testimony from Colleen, Alexandra, and Colleen and Theo's son, Aidan. Before the trial began, the parties agreed the divorce agreement had merged with the divorce decree, leaving for determination at trial the amount Colleen owed the estate under the decree, whether the doctrine of laches applied to enforcement of the decree, and whether the estate was responsible for mortgage payments and storage fees. After receiving the evidence, the district court ordered post-trial briefing and closing arguments at a later date. Before closing arguments took place, this Court published its opinion in Acton v. Acton , 2017 WY 151, 406 P.3d 1279 (Wyo. 2017). In Acton , we acknowledged the general rule regarding divorce agreements merging with divorce decrees, but also stated:
However, this Court has long recognized that even a contract with an integration clause, for instance a divorce agreement, may be modified through oral agreement or by mutual conduct of the parties if certain conditions are met. See Big-D Signature Corp. v. Sterrett Props ., LLC , 2012 WY 138, ¶ 33, 288 P.3d 72, 80 [ (Wyo. 2012) ]. The conditions that must be met to orally modify an integrated agreement are: "First, there must be evidence that the parties orally modified the contract terms, and second, the parties have taken actions consistent with the new terms." Big-D , ¶ 33, 288 P.3d at 81.
Acton , ¶ 9, 406 P.3d at 1281.
[¶7] Colleen relied on Acton in her closing argument. The district court acknowledged Acton but believed it conflicted with this Court's long-standing precedent and the admonition contained in the remand. The court concluded that, because the divorce agreement merged with the divorce decree, the parties could no longer avail themselves of contract remedies. Further, Wyoming Rule of Civil Procedure 60(b) did not afford Colleen relief from the divorce decree. Based on the terms of the divorce agreement and decree, Colleen was obligated to pay the estate $ 125,055.35 for Theo's share of the real property. The court determined the doctrine of laches is an equitable remedy that cannot be applied when the action is to enforce a legal judgment such as a divorce decree. The court also found the divorce agreement was silent regarding mortgage contributions from Theo and, therefore, the court could not require those contributions when enforcing the decree. Finally, the court determined Colleen was not entitled to storage fees. As with the mortgage contributions, the divorce agreement did not contemplate storage fees. The court further concluded that even if awarding storage fees would be appropriate as a means of enforcing the divorce decree, Colleen did not provide an adequate evidentiary basis of an appropriate storage rate. Colleen filed a timely notice of appeal.
STANDARD OF REVIEW
[¶8] We use the following standard of review when reviewing a district court's decision following a bench trial:
The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively *1266 correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed de novo .
Galiher v. Johnson , 2018 WY 145, ¶ 6, 432 P.3d 502, 507 (Wyo. 2018) (quoting Graybill v. Lampman , 2014 WY 100, ¶ 25, 332 P.3d 511, 519 (Wyo. 2014) ).
[¶9] We review a district court's decision to deny a motion brought under W.R.C.P. 60(b) for an abuse of discretion. Barnes v. Barnes , 998 P.2d 942, 944 (Wyo. 2000).
A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.
McBride-Kramer v. Kramer , 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019) (quoting Three Way, Inc. v. Burton Enters., Inc. , 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008) ).
DISCUSSION
Modification of Divorce Decree
[¶10] Colleen argues that, even though the parties stipulated the divorce agreement merged with the divorce decree, the district court should have found Colleen and Theo orally modified the terms of the agreement and the decree based on this Court's decision in Acton . Colleen submits the evidence at trial shows that she and Theo agreed that Theo would not require Colleen to pay him for his equity in the home and the two acted in conformity with that agreement. She maintains she would have proceeded differently had she known she would be responsible for the payment; specifically, she would have refinanced the house and paid Theo his share in 2007 when the house had an increased value instead of waiting until now and owing the estate interest.
[¶11] The district court did not apply Acton for two reasons. First, this Court specifically instructed the district court to apply the general rule that it is presumed a divorce agreement merges in the divorce decree and that courts do not retain jurisdiction to modify property distributions. The parties stipulated that the divorce agreement merged with the decree. Second, the district court surmised the decision in Acton "appears to be an erroneous statement of the law." The court recognized that the holding in Acton seemed to conflict with this Court's mandate, would constitute a "sea change" in the area of family law in Wyoming, and may alter the outcome of this case.
[¶12] The facts from Acton can be distinguished to some extent from the facts here. While in both cases the parties' divorce agreement was incorporated into the divorce decree, the subsequent oral agreement in Acton did not modify who received what property, but instead simply extended the amount of time the husband had to remove his property from the former marital home. Acton , ¶ 5, 406 P.3d at 1280. Although this factual distinction could be considered significant, both cases implicate the general rule of finality in the property distribution terms of divorce decrees. In that respect, the two cases should be treated similarly. This Court has long recognized the importance of finality in a divorce judgment. Harshfield v. Harshfield , 842 P.2d 535, 538 (Wyo. 1992). "Especially is this true in divorce cases when the emotional involvement of the parties tends to magnify the importance of all matters in connection therewith." Id . For this reason, res judicata bars modifying a divorce decree except under particular circumstances involving *1267 child custody, child support, and alimony. Id . A district court, however, does not retain jurisdiction to modify marital property divisions. Id .
[¶13] A requirement in a divorce decree is an order of the court, regardless of its significance. If parties were permitted to orally modify the terms of a court order, divorce decrees would lose their intended force and effect, parties would have incentive to try to avoid compliance, re-litigation of decided issues could be the norm, and parties would never see the end of domestic property disputes. The reasoning in Acton does not further the essential concept of finality in marital dissolution property disputes long required by our precedent. We also, however, recognize the important principles of stare decisis to further the "evenhanded, predictable, and consistent development of legal principles, foster[ ] reliance on judicial decisions, and contribute[ ] to the actual and perceived integrity of the judicial process." Brown v. City of Casper , 2011 WY 35, ¶ 43, 248 P.3d 1136, 1147 (Wyo. 2011) (quoting State ex rel. Wyo. Workers' Comp. Div. v. Barker , 978 P.2d 1156, 1161 (Wyo. 1999) ). For that reason, this Court uses caution when overruling prior case law. Id . But,
we should be willing to depart from precedent when it is necessary to vindicate plain, obvious principles of law and remedy continued injustice. When precedential decisions are no longer workable, or are poorly reasoned, we should not feel compelled to follow precedent. Stare decisis is a policy doctrine and should not require automatic conformance to past decisions.
Id . (internal citations and quotation marks omitted).
[¶14] Although Acton was decided a relatively short time ago, the poorly reasoned and unworkable nature of the opinion is clear. The opinion "recognized" the "established principle that the parties to a divorce may not modify a divorce decree without submitting those modifications to the district court for its consideration and approval," but then relied on a case involving the breach of a home construction contract to conclude the parties subject to a divorce decree can orally modify the conditions in the decree. Acton , ¶ 9, 406 P.3d at 1281. In doing so, Acton did not theoretically overrule any prior precedent, but modified the well-established principle to the point it no longer has any meaning. Ironically, the Acton opinion did not take into account the doctrine of stare decisis and the state of our precedent before announcing a new rule of law that would substantially impact divorce agreements and decrees in the future.
[¶15] To allow parties to a divorce decree to orally modify the terms of the divorce agreement that have merged into the decree-a court order-is unworkable. It will be impossible for one party to enforce the order against the other party if there are any future disputes, as the district court will have to conduct a mini-trial to determine whether any of the provisions were modified. The whole purpose of a court order is to have something that can be enforced against a person who is not complying with the court's decision. To allow individuals to modify orders without court intervention would defeat the very purpose of a court order. Therefore, we overrule our decision in Acton and reaffirm the principle that we presume a divorce agreement merges into the divorce decree, and the agreement will no longer be given effect. Zupan v. Zupan , 2010 WY 59, ¶ 10, 230 P.3d 329, 332 (Wyo. 2010) ; Pauling , 837 P.2d at 1078. Further, a district court does not retain jurisdiction to modify marital property divisions based upon a change of circumstances and, instead, is limited to vacating judgments for fraud, mistake, inadvertence, or irregularity under W.R.C.P. 60(b). Harshfield , 842 P.2d at 538-39. On the basis of these well-established and reasoned principles, the district court did not err when it followed this Court's guidance in the remand instead of applying Acton . The parties agreed the divorce agreement merged with the divorce decree; therefore, the district court could not modify the agreement absent vacating the judgment under Rule 60(b).
Relief under W.R.C.P. 60(b)
[¶16] Colleen argues that the district court should have given her relief from the terms of the divorce decree under W.R.C.P. 60(b). That Rule states:
(b) Grounds for Relief from a Final Judgment, Order, or Proceeding . - On *1268 motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.
Colleen specifically relies on subsections (5) and (6). Her argument relies exclusively on her assertion that Theo wanted Colleen to keep the house without having to pay him for his portion of the house in accord with the divorce decree. She claims it would be "extremely unfair and create a hardship the parties never intended" if the terms of the divorce decree are enforced.
[¶17] Rule 60(c) requires that "[a] motion made under Rule 60(b) must be made within a reasonable time-and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." See also, Linch v. Linch , 2015 WY 141, ¶ 16, 361 P.3d 308, 313 (Wyo. 2015) (time limitations in Rule 60(c) do not apply to motions brought under Rule 60(b)(4) (void orders) ). Colleen seeks relief under Rule 60(b)(5) and (6) ; therefore, the motion must be filed within a reasonable time. This Court has not had the occasion to discuss the parameters of a "reasonable time" as explained in the rule. The Wyoming rule, however, is identical to the federal Rule 60 and it is appropriate to look to the federal courts for guidance. Leach v. State , 2013 WY 139, ¶ 30, 312 P.3d 795, 801 (Wyo. 2013).
"There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." Sudeikis v. Chicago Transit Authority , 774 F.2d 766, 769 (7th Cir. 1985). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties." Ashford v. Steuart , 657 F.2d 1053, 1055 (9th Cir. 1981).
Kagan v. Caterpillar Tractor Co. , 795 F.2d 601, 610 (7th Cir. 1986) (brackets in original).
[¶18] The divorce decree was entered in 2007 and Colleen did not request relief under Rule 60(b) until 2017-ten years after the court entered the decree and four years after Alexandra filed suit against Colleen. Colleen has not provided this Court with an explanation of why she waited ten years to obtain relief from the divorce decree. It appears Colleen and Theo did not abide by the terms of the decree from the time it was entered, thus the grounds Colleen relies upon have existed for the entire ten years. She opted not to take any action to be relieved from the order in the divorce case until a few days before trial in this case. We find, under these circumstances, a ten-year delay is not a reasonable time to bring a motion for relief under Rule 60(b)(5) or (6). See Barnes , 998 P.2d at 945-46 (a sixteen-month delay between judgment and motion under Rule 60(b)(6) was not reasonable); Sorbo v. United Parcel Serv ., 432 F.3d 1169, 1178 (10th Cir. 2005) (one year between judgment and Rule 60(b) motion was not a reasonable time); United States v. Morales-Morales , 222 Fed.Appx. 796, 796-97 (10th Cir. 2007) (one and a half years between judgment and Rule 60(b) motion was not a reasonable time). The district court did not abuse its discretion in denying Colleen's request for relief from the divorce decree under Rule 60(b).
Laches
[¶19] The district court found, and the parties seem to agree, that Wyoming law does not permit a party to use laches to prevent the other party from asserting a legal right, such as enforcing an award in a *1269 divorce decree. See Hammond v. Hammond , 14 P.3d 199, 202 (Wyo. 2000) (defense of laches is not available in child support collection actions because suits for monetary judgements for child support arrearages are legal rather than equitable). However, the district court referred to an unpublished Colorado Court of Appeals case that allowed the use of laches when a wife attempted to collect spousal support that was ordered in a divorce decree twenty-six years after the decree had been entered. See In Re the Marriage of Kann and Kann , No. 16CA0259, --- P.3d ----, 2017 WL 2981861 (Colo. Ct. App. July 13, 2017). The district court suggested that if Wyoming adopted the approach taken in Kann and allowed laches in these situations, the equities would favor Colleen. Relying on Kann , Colleen argues this Court should recognize laches as a defense against enforcing the divorce decree.
[¶20] In Hammond, we explicitly rejected the use of laches in preventing a mother from collecting child support thirteen years after the father's support obligation ended. We explained that a monetary judgment for child support arrearages is a legal claim, subject to a statute of limitations, and the equitable remedy of laches is unnecessary. Hammond , 14 P.3d at 202.[3] The same is true of the divorce decree here. The estate's enforcement of the property provision of the decree is a legal claim that is subject to a statute of limitations, thus application of laches is unnecessary.
[¶21] We have considered the Colorado appellate court's Kann opinion. It certainly reaches a different result from Hammond and has thoughtful reasons for doing so. We do not believe the present case provides the appropriate means to determine whether we should depart from Hammond . Colleen submits that "numerous" states apply laches in situations similar to the one here, but only cites to Kann . Further, while she explains the Kann decision, she does not provide us with any analysis or reasoning as to why the Kann conclusion is sounder than Wyoming's current approach (which, according to Kann, is shared by about half of the states). See Kann , --- P.3d ----, 2017 WL 2981861, ¶ 31. Without a cogent analysis explaining these points, this Court declines to abandon its clearly established law. See Tozzi v. Moffett , 2018 WY 133, ¶ 26, 430 P.3d 754, 762 (Wyo. 2018) (This Court may decline to consider claims not supported by cogent argument.).
[¶22] Colleen also argues the doctrines of waiver and detrimental reliance should prevent Alexandra from seeking enforcement of the terms of the divorce decree. Colleen provides no citation to authority to support the use of these theories as a defense to enforcement of the divorce decree. Instead, it appears her argument is solely that Theo's behavior modified the terms of the divorce agreement. As we explained above, a divorce agreement ceases to be an independent agreement when it is merged into a divorce decree and, therefore, cannot be modified simply by the behavior of the parties. Zupan , ¶ 10, 230 P.3d at 332.
Storage Fees
[¶23] The divorce agreement and decree stated that Theo was to remove his property from the family home at his expense by January 23, 2002. At the time the district *1270 court issued the order that is the subject of this appeal, Theo's belongings were still at the home. The district court denied Colleen's request for storage fees on two bases. First, it determined that, to the extent it could treat the divorce agreement as an independent contract before it merged into the divorce decree, the agreement did not include a provision for storage fees. The court then considered whether it could award storage fees as part of enforcing the divorce decree since Theo's belongings have been in the home long after the court ordered the items be removed via the divorce decree. The court concluded that Colleen failed to provide persuasive evidence regarding an appropriate storage fee, and that Colleen's testimony demonstrated that she gave Theo permission to continue storing his property at the home.
[¶24] On appeal, Colleen appears to argue she is only entitled to storage fees from May 10, 2002 (the date the parties signed the divorce agreement) until July 20, 2007 (the date the court entered the divorce decree). She does not address the district court's order regarding storage fees at all, and her argument does not clearly state on what theory she believes she is entitled to storage fees. Her argument suggests she is entitled to storage fees under contract principles, apparently believing the divorce agreement can stand as an independent contract until it is merged into the divorce decree. Colleen, however, has not provided a single citation to any authority that supports her assertion that "equity dictates" that Theo should have to pay storage fees. Because she has failed to provide cogent argument with citation to pertinent authority, we decline to consider this issue. Tozzi , ¶ 26, 430 P.3d at 762.
Mortgage Payments
[¶25] Colleen argues Theo's estate should have to pay for fifty percent of the mortgage payments since the court entered the divorce decree because he was still a part-owner of the house as a tenant in common.[4] She relies on Hofstad v. Christie , 2010 WY 134, 240 P.3d 816 (Wyo. 2010) and a case from the Oregon Supreme Court, Beal v. Beal , 282 Or. 115, 577 P.2d 507 (1978), to support her position. These cases, however, considered actions between unmarried couples who owned property as tenants in common and have no applicability to the situation presented here.
[¶26] In Hofstad , the parties were unmarried but lived as a family with their children for extended periods of time over ten years. Hofstad , ¶ 3, 240 P.3d at 817. Mr. Hofstad purchased a new home and he and Ms. Christie were both listed on the warranty deed. Id ., ¶ 4, 240 P.3d at 818. When the relationship ended, Ms. Christie sought partition of the home. Id ., ¶ 6, 240 P.3d at 818. Although Mr. Hofstad made the majority of the financial contribution to the home, the district court considered the familial relationship of the parties and Mr. Hofstad's donative intent in deciding to give each party an equal interest in the home. Id ., ¶¶ 10-17, 240 P.3d at 819-21. After considering these factors, we affirmed the district court's decision to partition the property equally. Id ., ¶ 18, 240 P.3d at 822.
[¶27] In Beal , the parties had divorced and thereafter purchased property together as "husband and wife." Beal , 577 P.2d at 508. Two years later, Ms. Beal moved out of the home. Id . The Oregon Supreme Court established a special rule for couples who had lived together in a nonmarital domestic relationship, requiring the courts to distribute the property based upon the express or implied intent of the parties. Id . at 510. The court determined the Beals intended they be treated as equal co-tenants and awarded each party an equal interest in the property. Id. However, the court also ordered that Ms. Beal, as a co-tenant, was responsible for half of the mortgage payments on the home after she moved out. Id .
[¶28] Unlike the circumstances found in Beal and Hofstad , Colleen does not need a court to determine what interest she has in *1271 the real estate because the district court already considered the equities of her situation when it entered the divorce decree awarding her the property. To find that Theo was a tenant in common and was required to contribute fifty percent of the mortgage payments would be contrary to the established rule discussed above that prohibits parties from orally modifying the terms of a divorce decree absent judicial intervention. The divorce agreement and decree did not provide that Theo was responsible for any of the mortgage payments, therefore, the district court properly declined Colleen's request for mortgage contributions from the estate.
CONCLUSION
[¶29] The district court correctly determined that a divorce agreement that has merged into a divorce decree cannot be modified by oral agreement of the parties, and we overrule our decision in Acton v. Acton , 2017 WY 151, 406 P.3d 1279 (Wyo. 2017) that states otherwise. Colleen failed to demonstrate she was entitled to relief from the decree under W.R.C.P. 60(b), and she cannot use the doctrine of laches to prevent enforcement of the judgment. The district court properly concluded Colleen was not entitled to storage fees or mortgage contributions.
[¶30] Affirmed.

The Appellee, Alexandra Meiners, is the personal representative of Theo's estate. Everyone involved in this litigation shares the same surname; therefore, to avoid confusion the members of the Meiners family will be referred to by their first names.

The decree "approved and incorporated in full" the terms of the agreement and ordered the parties to "comply in full with the provision(s) of said Agreement."

Although not addressed by either party, it is important to point out that this Court has at times applied laches to prevent a party from asserting a "legal right." In Windsor Energy Group, L.L.C. v. Noble Energy, Inc. , 2014 WY 96, 330 P.3d 285 (Wyo. 2014), we determined the unique circumstances of that case (an oil and gas agreement) justified the application of laches to a breach of contract claim when the statute of limitations had not yet run. We explained that if the existence of a statute of limitations was a barrier to the use of laches, laches would be abolished because all actions in Wyoming are governed by a statute of limitation. Id ., ¶ 22, 330 P.3d at 291.
We, however, distinguished the oil and gas agreement at play in Windsor from the child support order in Hammond . We pointed out that a child support order is a judgment as soon as it is due, and the limitation period applicable to uncollected judgments applies. Id ., ¶ 21, 330 P.3d at 291. We also explained that even in breach of contract cases covered by an applicable statute of limitations, the use of laches should be "very limited in scope." Id ., ¶ 22, 330 P.3d at 291. Thus, although it may be limited in scope, this Court has allowed the use of laches when parties are trying to assert a "legal right." See also, Mullinnix LLC v. HKB Royalty Trust , 2006 WY 14, ¶ 32, 126 P.3d 909, 923 (Wyo. 2006) ("Laches is a form of equitable estoppel which operates when a party has unreasonably delayed in asserting a legal right.").

Colleen also asserts in her brief that she should be compensated for half of the homeowners' association fees and maintenance costs on the home. The district court did not address these expenses in its order, and Colleen did not assert she was entitled to them in her counterclaims. "Our precedent is clear that an argument may not be made for the first time on appeal" and we decline to consider Colleen's request for these costs. Reichert v. Daugherty , 2018 WY 103, ¶ 23, 425 P.3d 990, 998 (Wyo. 2018).