ADJUDGED IN

# THE COURT OF ERRORS AND APPEALS,

OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM CHANCERY.

OCTOBER TERM, 1849.

---

PETER M. RYERSON, appellant, and JAMES BOORMAN and others, respondents.

The facts of the case, and the decree of the Chancellor, are reported *ante* page 66.

*W. Pennington* and *P. D. Vroom* for the appellant.

*F. T. Frelinghuysen* for the respondents.

GREEN, C. J. Ryerson (the appellant) being indebted to the respondents, (Boorman & Johnston) upon two mortgages for $22,500 of principal, at July term, 1844, the respondents filed a bill in the Court of Chancery to foreclose their mortgage, Ryerson appeared to the suit, and at October term, 1844, filed a general demurrer to the bill. At January term, 1845, the demurrer was overruled, and the defendant ordered to answer in forty days. No answer was filed, and on the 2d of April, 1845, a de-

cree *pro confesso* was taken against the defendant, and at the same term a final decree was made in favor of the mortgagees for $27,727.24, the amount of principal and interest due on the mortgage.  An execution for the sale of the mortgaged premises was issued upon the decree, and on the 15th of October, 1847, the mortgaged premises were sold, and purchased by the agent of the mortgagees for the sum of $15,000.  On the 28th of October, 1847, thirteen days after the sale, the bill in the present cause was filed by Ryerson, the mortgagor.  It was filed with a double object.

1.  To avoid the sheriff's sale as having been irregularly made.
2.  To be relieved against the decree in the foreclosure suit.

By an order bearing date on the 21st of June, 1848, the Chancellor set the sale aside, and directed a re-sale of the premises. From this order there is no appeal.  Upon a re-argument, the Chancellor, by an order, bearing date on the 27th of October, 1848, decided that the decree in the foreclosure suit was a valid and subsisting decree, and that the complainant Ryerson was not entitled to be relieved against it.  From this decree Ryerson has appealed to this Court.  He contends that the decree is erroneous, and he seeks by his bill to impeach the decree in the foreclosure suit upon two distinct grounds, viz:

I. That the original decree was erroneous, and was obtained by surprise.

II. That by virtue of arrangements since made between the parties, the complainant is entitled to be relieved from the payment of a part of the decree, and to an extension of the time for payment.

The bill charges, that the bond and mortgage upon which the decree of foreclosure rests were invalid, and that the decree was taken pending negotiations between the parties for a compromise, in consequence of which the defendant was deprived of his defence.  This ground of complaint is effectually removed by the answer of the defendants, which is clear, direct and unequivocal in reply to the charge, and is not insisted on before the Court.

There is therefore, no question but that the decree of foreclosure of April, 1844, was properly taken, and for a sum justly

due. The only question in the cause is, has any agreement since been made between the parties, by virtue of which Ryerson is released from the operation of the decree, or the complainant's rights under it in any wise impaired.

The case stands before the Court upon bill and answer, with the accompanying documents. The statements of an answer are to be taken as true, unless contradicted by evidence. There is really no controversy as to the facts.

The bill charges that negotiations for a compromise commenced prior to the date of the decree of foreclosure. By the answer it appears that, on the 25th of March, 1845, within ten days before the signing of the decree, Ryerson applied to Boorman for a compromise, on the sole ground of his inability to pay the whole debt. Boorman proposed that if Ryerson would immediately pay the interest in arrear from February, 1844, and the costs then accrued, he (Boorman) would instruct his solicitor to take a decree for $20,000, and would extend the time of payment five years. Ryerson however, paid nothing; no instructions were given to the solicitor, and the decree was taken for the full amount of the mortgage debt.

On the 12th of September following, the mortgaged premises being then advertised for sale under the decree, upon the 6th of October, Ryerson made new propositions for the payment of the mortgage debt, to which Boorman acceded. No contract however was made between the parties, but Boorman writes to his solicitor stating the terms, and authorizing the solicitor, upon certain conditions, to enter into a stipulation with Ryerson upon the terms proposed. One of the conditions was, that $1,100 of the debt, besides costs, counsel fees and insurance should be paid by Ryerson, and the arrangement completed on or before 1st of October, within twenty days from the date of the instructions. The money or any part of it was not paid as proposed, and the authority of the solicitor to enter into the stipulation was determined. On or about the 5th of January, 1846, Ryerson paid to the solicitor, costs, counsel fees and insurance money, besides $1,100 upon the debt. The solicitor having no authority to accept it upon the proposal of the 12th of September, and no

authority to enter into any stipulation under his instructions of that date, apprized his principals of what had been done. Boorman thereupon, under date of 5th of January, 1846, wrote to his solicitor as follows:

" We have examined the statement left with us this morning of this date signed by you, of moneys paid you by P. M. Ryerson. Applying the payment of $500 therein stated as ' *on account of Principal*' to the payment of *interest* on $20,000 from the 1st of August last to 1st inst., (which produces the same moneyed result) we are content that on remitting to us the $446.05 in your hands, that you enter into the stipulation authorized in our respects of 12th of September last.

" This will conform to the spirit of the previous arrangements, and meet Mr. Ryerson's request for some extension of the proposed payments now stand thus: $20.000 principal, payable as follows: $1,000 1st of July, 1846; $1,000 1st of January, 1847; $1,000 1st of July, 1847; $500 1st of January, 1848; $500 1st of July, 1848; $500 1st of January, 1849; $500 1st of July, 1849; balance on 1st of July, 1850. Interest on the unpaid principal to be paid semi-annually on the 1st of July and 1st of January, each year."

He makes no agreement, but simply modifying the terms, he authorized the solicitor to enter into the stipulation of 12th of September last. No stipulation was in fact signed by the attorney, and no other agreement was made. The case stands upon the instructions given by Boorman to his solicitor on the 12th of September. Waiving all questions as to the validity and binding operation of those instructions as an agreement, I propose to consider the answer as if the attorney had actually signed an agreement pursuant to his stipulations, and that the agreement was founded on a valid consideration.

What contract was the solicitor authorized to make? I quote its language. " These payments being made, we are willing that you shall as our attorney, enter into a stipulation for us that on the payment as follows, of the further sum of $19,500, with interest semi-annually from the 1st of August last till paid, *we will discharge him and release the property mortgaged to us.*"

The periods for payments are then stated, and as modified stand thus : $1,000 1st of July, 1846 ; $1,000 1st of January, 1847 ; $1,000 1st of July, 1847 ; $500 1st of January, 1848 ; $500 1st of July, 1848 ; $500 1st of January, 1849 ; $500 1st of July, 1849 ; and the balance on the 1st of July, 1850.

" This stipulation is to be given with a reservation of all *due* rights under the mortgage and decree of sale, provided the stipulated payments of interest and on account of principal are not regularly made to us in the city of New York."

Now what was the agreement which the attorney was authorized to make? To reduce the decree to $20,000? To give Ryerson $8,000? No such thing. It was simply this : on the payment of $20,000 by instalments on certain specified days, we will discharge him and release the premises mortgaged to us." The creditor, having a *bona fide* debt of record of nearly $28,000, agrees with the debtor, if you will pay $20,000 on certain days with interest, we will, after the last payment is made, release the balance. Language can scarcely be plainer. And yet, as if to guard against the possibility of any misconstruction, it is added : " This stipulation is to be given with a reservation of all *due* rights under the mortgage and decree, unless the payments of principal and interest are promptly made at the time specified."

" *Due*" means that which law or justice requires to be done. *Due* rights means *just* rights, *legal* rights. The plain meaning of the clause is, that if the payments are not made as stipulated, the decree is to stand in full force, and all the rights under it to remain unimpaired, and the whole mortgage debt, as secured by the decree, to remain due and payable.

This is the extent of the agreement.

Now it is admitted that Ryerson has not paid $1 in pursuance of his contract, and yet he insists that his debt is reduced to $20,000. The proposition can scarcely be treated with the gravity becoming a judicial tribunal. It admits of no argument. It is without foundation, or even a plausible pretext to support it.

The complainant has a decree and execution in his favor for nearly $28,000, admitted to be a just debt. He says to his

debtor, if you will pay me $20,000, by instalments with interest punctually, I will give you five years to pay the debt, will accept $20,000 as satisfaction, and release you from the balance of the claim. But if you do not pay *punctually*, my rights under the decree remain unimpaired; I shall insist upon the whole debt. The debtor never pays $1, never performs a tittle of the contract on his part, and then gravely asks a Court of Equity to compel the creditor to perform his offer. It is insisted that the contract must be treated as if it was included in the mortgage. Now suppose that it was. Suppose that these very conditions had been originally incorporated into the bond and mortgage. The debtor acknowledges himself to owe, and binds himself to pay $27,000 on a day specified, but in case the obligor pays $20,000 by instalments, with interest, by that day, it will be accepted in full, but if any instalment be not paid, the whole shall be due and payable. On a suit upon such bond, if the defendant had never paid $1, could he set up as a defence, that he only owed $20,000? Or suppose a bond is given for $27,000, with interest at six per cent., but if interest be paid promptly on the day appointed, five per cent. will be accepted in satisfaction. Can the debtor ask a Court of Equity to compel the creditor to accept five per cent., though the interest was not paid according to the contract? This result is not penal in its character. The entire debt is justly due. It is a debt of record. The creditor agrees upon certain conditions to release a part of the debt. In so doing, he had a right to impose his own terms. The terms are not complied with, and the creditor is under no obligation in law or equity to release any part of his claim.

The decree of the Chancellor is right, and should be affirmed with costs.

The Court concurred in this opinion, WALL and SCHENCK, Judges, dissenting.

Decree affirmed.