**D.M., Appellant,**

v.

**D.A., Appellee.**

No. S–5576.

Supreme Court of Alaska.

Dec. 2, 1994.

Allison E. Mendel, Mendel & Huntington, Anchorage, for appellant.

Kathleen C. Barron, Wasilla, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MATTHEWS, Justice.

D.M. and D.A. were involved in a personal relationship from 1985 to 1991 and engaged in a business partnership from 1987 to 1991. This case involves the dissolution and winding up of the partnership and the ownership of a house in which both lived. D.M. claims that the trial court erred in awarding the house to D.A. despite a quitclaim deed from D.A. to D.M. and D.A. and in failing to account for and distribute the assets of the partnership properly.

I. *FACTS AND PROCEEDINGS*

D.M. and D.A. began an intimate personal relationship in 1985. Except for a period between March and June 1986, they lived together from early 1985 until March 1991. They originally lived in D.M.'s home and moved into D.A.'s house in Palmer (the Palmer property) in November 1986. The Palmer property consists of a house and two barns on approximately twenty acres, and is encumbered by two mortgages, with monthly payments of $685 and $350. D.M. made the larger of the two mortgage payments for most of the time that she lived at the Palmer property. She took a tax deduction in 1987 for payments made on the property. D.M. also contributed labor and money to improvements to the property.

On December 30, 1988, D.A. quitclaimed her interest in the property to herself and D.M., "in consideration of love and affection." At the time of the trial, the Palmer property was appraised at $147,500, with $60,000 owed on the mortgages.

During the period in which D.M. and D.A. lived together, D.M. was the primary wage earner. She earned approximately $50,000 per year. D.A. earned approximately $10,-000 per year.

In 1987, D.M. and D.A. entered into a horse breeding partnership called W.R. Arabians (W.R.). Each purchased an Arabian stallion for $5,000 to start the business. In 1988, W.R. purchased R.H. Almaz, an Arabian mare, for $35,000, plus the right to the firstborn mare. This purchase price included the right to breed Almaz back to a particular stallion. At the time of trial, W.R. had delivered the foal promised as part of the purchase price of the mare, and retained two other foals produced by Almaz. A fourth foal had been sold. W.R. had liabilities of approximately $16,000 to $17,000. D.M. and D.A. stipulated at trial that D.M. owned 73% of the partnership and D.A. owned 27%.[1]

D.M. and D.A. separated in March 1991. Both signed an agreement dividing their accumulated property in April 1991. This contract was never performed. Instead, D.A. filed a petition for dissolution of the partnership in May 1991. D.M. counterclaimed for enforcement of the April contract, division of any remaining partnership assets, possession of personal property, and partition of the Palmer property.

---

1. The superior court's findings state that the division was 77/23, in favor of D.M. Although D.M. cites this finding in her brief, she agreed to 73/27 at trial and 73/27 is consistent with the partnership tax returns and the numbers discussed in D.M.'s testimony.

Following trial, the court held that the April contract was void because D.A. signed it under duress.[2] The court also concluded that D.M. was not entitled to any interest in the Palmer property, based on a finding that it was the parties' intent to transfer the property only for tax purposes. Finally, the court held that D.M.'s contributions to the Palmer property above and beyond its rental value to her approximately equaled the value of D.A.'s interest in W.R. Therefore, the court awarded D.A. the Palmer property and D.M. W.R. The court also divided the parties' personal property.

On appeal, D.M. argues that the trial court erred 1) in failing to award her a half interest in the Palmer property based on the deed; 2) in failing to account for and distribute the assets of the partnership; and 3) in valuing the horses owned by the partnership. We address each argument in turn.

## II. DISCUSSION

### 1. The Palmer Property

■ The deed D.A. executed on December 30, 1988, conveyed her interest in the Palmer property to herself and D.M. It does not specify the particular interest that each was to receive. A deed to two or more people of a single piece of property creates a tenancy in common in that property. AS 34.15.110(a). Tenants in common are pre-

sumed to take equal undivided interests in the property, although this presumption may be rebutted. *Sanders v. Knapp*, 674 P.2d 385, 387 (Colo.App.1983); *Sack v. Tomlin*, 110 Nev. 204, 871 P.2d 298, 304 (1994); *Cummings v. Anderson*, 94 Wash.2d 135, 614 P.2d 1283, 1287 (1980); *see also* Annotation, *Presumption and proof as to shares of respective grantees or transferees in conveyance or transfer to two or more persons as tenants in common, silent in that regard*, 156 A.L.R. 515, 516 (1945) [hereinafter, Annotation, *Shares of tenants in common* ]. Therefore, on its face and without additional evidence, the deed D.A. executed conveyed undivided one-half interests in the Palmer property to both D.A. and D.M. The trial court held that D.M. received no interest, however, because it found, by a preponderance of the evidence, that D.A. only intended to allow D.M. to be able to take legal tax deductions on the property. Although neither the parties nor the court identified a legal basis for denying the grantee on a deed her interest in the property based on a finding that the grantor only intended to allow for tax deductions, we assume that the court intended to reform the deed.[3] Reformation of an instrument is the proper remedy where it is alleged that the instrument does not conform to the actual intentions of the parties.[4] *See Oaksmith v. Brusich*, 774 P.2d 191, 197 (Alaska 1989) ("Reformation is a means of correcting mutu-

2. The finding of duress was based on a history of domestic violence between D.M. and D.A., including an incident two days prior to the signing of the contract. D.M. does not challenge this conclusion on appeal.

3. The choice of the proper standard for resolving these property disputes is a question of law which is reviewed de novo. *Wood v. Collins*, 812 P.2d 951, 956 n. 5 (Alaska 1991); *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

Where an instrument of conveyance is silent as to the respective shares of two or more grantees, reformation of the deed to supply a (mistakenly) missing term is one of two alternative means of determining the respective interests of the grantees. The party claiming an unequal share might also attempt to rebut the presumption in favor of equal interests and prove that unequal shares were intended. *See, e.g., Tomlin*, 871 P.2d at 304; *Sanders*, 674 P.2d at 387; Annotation, *Shares of tenants in common*, at 517. This ap-

proach requires a lesser burden of proof because it does not involve changing the terms of the instrument as written. Instead, it involves interpretation of the parties' understanding in the face of a silent instrument. Of these two alternative approaches, however, only reformation of the deed could justify holding that one of the purported grantees received *no* interest. Therefore, we presume that the superior court intended to reform the deed to reach this result.

4. Because D.A. sought reformation of the deed, the trial court did not err in admitting parol evidence concerning the parties' intentions in executing the deed. Parol evidence is admissible to establish a claim for reformation. *Diagnostic Imaging Center v. H & P*, 815 P.2d 865, 867 (Alaska 1991); *Kupka v. Morey*, 541 P.2d 740, 750 (Alaska 1975); *Gablick v. Wolfe*, 469 P.2d 391, 394 (Alaska 1970). Parol evidence is also admissible to rebut any presumptions concerning the fractional interests of tenants in common. *See* Annotation, *Shares of tenants in common*, at 517.

al mistakes and of conforming a contract to the clear intention of the parties."); *Riley v. Northern Commercial Co.*, 648 P.2d 961, 969 (Alaska 1982).

■ Reformation may be granted, however, only when it is shown *by clear and convincing evidence* that it is appropriate. *Fireman's Fund Mortg. Corp. v. Allstate Ins. Co.*, 838 P.2d 790, 797 (Alaska 1992); *Oaksmith*, 774 P.2d at 197. The trial court did not apply this evidentiary standard. Instead it repeatedly stated that it found the parties' intent "by a preponderance of the evidence." Remand is therefore necessary so that the superior court might consider D.A.'s reformation claim under the proper evidentiary standard.

■ On remand, the trial court should first determine whether the deed was executed in accordance with a contract between the parties or was a gift conveyance.[5] D.A.'s claim for reformation of the deed depends on the resolution of this question. If the property was conveyed by contract, then D.A. must prove by clear and convincing evidence 1) that the actual agreement between herself and D.M. did not call for conveyance of an undivided one-half interest in the property, as the deed indicates, and 2) what specific interest the parties had agreed that D.A. would convey. *Oaksmith*, 774 P.2d at 197. If the conveyance to D.M. was a gift conveyance, then D.A. must prove by clear and convincing evidence 1) that she did not intend to transfer an undivided one-half interest in the property and 2) what specific interest she did intend to convey. *See Yano v. Yano*, 144 Ariz. 382, 697 P.2d 1132, 1135–36

(App.1985) ("[R]eformation may be granted on the application of the grantor of a voluntary conveyance on the basis of unilateral mistake."); 66 Am.Jur.2d *Reformation of Instruments* § 45 (1973); 76 C.J.S. *Reformation of Instruments* § 10 (1952).

If, on remand, the trial court determines that D.M. did receive some interest in the property, it must partition or sell the property. AS 09.45.260, .290. As part of this action, the court must determine the rights of each party in the property. AS 09.45.280. In this regard, if the court has not reformed the deed to show the specific interest D.M. and D.A. each received in the property, it must determine the respective interests of the two parties in accordance with the regular rules of cotenancy as modified by *Wood v. Collins*, 812 P.2d 951, 956–57 (Alaska 1991).

■ As already stated, the initial presumption is that each of the parties owned an equal undivided share. *Tomlin*, 871 P.2d at 304. If, however, it is shown in rebuttal that the parties contributed unequally to the equity in the property, a presumption arises that they intended to share the property in proportion to their respective contributions.[6] *Id.* at 304–05; *Cummings*, 614 P.2d at 1287; Annotation, *Shares of tenants in common*, at 517–18. Where the parties cohabit, the court must also examine the intent of the parties with respect to the ownership of the property. *Wood v. Collins*, 812 P.2d at 956. If an intent to hold the property in a particular proportion or to determine the proportion by a particular method can be discovered, this intent controls over the regular rules of cotenancy.[7] *Id.; see also Beal v. Beal*, 282 Or.

5. The superior court's findings imply that the conveyance to D.M. was a gift, but the court did not explicitly resolve this issue.

6. If the court finds that the parties intended to own equal interests, but in fact contributed unequally to the acquisition costs without intending to make a gift of any excess contributions, then the court should credit the party making excess contributions with those contributions in the division of the property. *See* 4A Richard R. Powell & Patrick J. Rohan, *Powell on Property* ¶ 607[6] at 50–60 to 50–61 (1993).

7. This rule is best understood not as an exception to the general rules of cotenancy, but as a particular application of those rules. The common law

has long recognized that presumptions concerning the respective interests of tenants in common where one contributes unequally to the purchase price are not applicable where the relationship between the parties indicates that one might have intended to make a gift to the other. *See, e.g., People v. Varel*, 351 Ill. 96, 184 N.E. 209, 211 (1932). *Wood v. Collins* merely recognizes that where the parties cohabit and share an intimate relationship, it is more likely than otherwise that one party may contribute more of the acquisition or upkeep costs and still expect only an equal share of the property. The excess contributions are "like a gift" to the other party. 812 P.2d at 956. The court must still find, however, that it was in fact the intent of the party making the excess contribution to give it to the other. *See,*

115, 577 P.2d 507, 510 (1978). Therefore, D.A.'s intention of allowing D.M. to take legal tax deductions is relevant as one possible indicator of whether she intended to transfer an equal or lesser interest in the Palmer property to D.M. Other relevant factors in determining the intent of the parties regarding their respective interests in common property, in the absence of an express agreement, include their cohabitation; other joint financial acts, such as joint savings or checking accounts; and the manner in which they treated other property held individually at the beginning of their relationship. *See, e.g., Beal,* 577 P.2d at 510.

### 2. *W.R. Partnership*

■ The superior court's written findings value the partnership at approximately $30,000. These findings also list assets of the partnership at a total value of $35,500 and liabilities of the partnership at $17,437.. The court's oral findings do not contain this inconsistency, but fail entirely to account for the partnership's remaining liability on the purchase price of Almaz, and do not list values for the assets of the partnership other than the horses. Moreover, the court's oral findings merely approximate the value of the partnership. Both sets of findings also misstate each party's interest in the partnership. We therefore remand to the superior court for the entry of consistent findings on the value of W.R.'s assets and liabilities.

On remand, the superior court must order the partnership's accounts settled in accordance with AS 32.05.350. *See Parker v.*

*Northern Mixing Co.,* 756 P.2d 881 (Alaska 1988).

### 3. *Value of the Horses* [8]

■ The parties presented widely disparate estimations of the value of the various horses owned by the W.R. Partnership. D.M.'s expert valued the horses at a total value of $4,500.[9] D.M. herself testified that she thought Almaz was worth at least $7,500 and that the two foals, Anna and Jewel, were worth $4,000 to $5,000 and $1,500 respectively. D.A. valued Almaz at $20,000, Anna at $15,000, and Jewel at $15,000. The court found that Almaz was worth $10,000, that Anna was worth between $7,500 and $10,000 and that Jewel was worth $7,500. The court placed the value of an unborn foal of Almaz at $2,500.[10] Given the range of values placed on these horses and the difficult nature of valuation in the Arabian horse market, we cannot say that the values chosen by the court were clearly erroneous.

### III. *CONCLUSION*

The judgment of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

---

e.g., *Tomlin,* 871 P.2d at 305 (upholding finding that original owner of property, who transferred property to herself and cohabitant as tenants in common, did not intend to make a gift of one-half of her accumulated equity to her cohabitant).

**8.** The value of the horses is a factual finding which may be reversed only if clearly erroneous. Alaska R.Civ.P. 52(a).

**9.** Almaz was valued at $2,500 and the two foals were valued at $1,500 and $500, respectively.

**10.** D.M. estimated that the foal would sell for $2,500.