2010 WY 134

**Jerald Korwin HOFSTAD, Appellant (Respondent),**

v.

**Cathryn Anne CHRISTIE, Appellee (Petitioner).**

No. S–09–0246.

Supreme Court of Wyoming.

Oct. 7, 2010.

Representing Appellant: Keith R. Nachbar, Casper, WY.

Representing Appellee: Harry G. Bondi, Casper, WY.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant Jerald Korwin Hofstad challenges the district court's judgment equally partitioning a home owned by him and Appellee Cathryn Anne Christie as tenants in common. We affirm.

## ISSUES

[¶ 2] Mr. Hofstad lists four issues:

1. Did the district court below commit reversible error when it applied Alaska and Montana law and treated an unmarried couple as family members for purposes of dividing real property owned jointly as tenants in common?

2. Did the district court below commit reversible error when it found unequal contributions toward the purchase price of the property, there was no specific evidence of a gift, and yet the district court presumed that a gift of the excess contribution was intended?

3. Did the district court below improperly assign the burden of proof to the donor to prove the negative—that no gift was made?

4. Where there was no family relationship, and no specific evidence of any intended gift, should the property be divided according to the proven unequal contributions of the parties?

## FACTS

[¶ 3] From February of 1996 to July of 2007, Mr. Hofstad and Ms. Christie were involved in a relationship and lived together for extended periods of time, but never married. However, their relationship produced twin boys born in 1996. The couple and their children, including five children from Mr. Hofstad's prior relationship, lived together in

* Chief Justice at time of expedited conference.

Casper from 1998 to 2005. Their home, located on Monument Road, was owned alone by Mr. Hofstad.

[¶ 4] In 2005, Hofstad decided to purchase a new home in Casper located at 1120 Donegal Street. At the time he entered into the contract on the Donegal home, he and Ms. Christie were separated. However, in April of 2005, the parties reconciled, and the warranty deed of the Donegal home conveyed the property to "Jerald K. Hofstad and Cathryn Anne Christie, grantee(s)." Mr. Hofstad paid the down payment, the closing costs, and entered into the loan obligation for the Donegal home. He used $124,053.15 from the sale of the Monument Road home, which was sold in May of 2005, to pay down the mortgage on the Donegal home.

[¶ 5] From May of 2005 until July of 2007, the parties and their children lived in the Donegal home. Mr. Hofstad paid all mortgage payments and utilities. Christie contributed to various improvements and was the homemaker of the home. In July of 2007, Christie moved out of the Donegal home.

[¶ 6] In December of 2007, Christie filed suit seeking partition of the Donegal home. After a bench trial, the court ruled that the home should be partitioned equally. The court reasoned that although Mr. Hofstad and Christie contributed unequal monetary amounts to the Donegal home, with Mr. Hofstad contributing substantially more money than Ms. Christie, Mr. Hofstad nevertheless failed to prove that there was not a family relationship or donative intent. Ms. Christie was awarded $70,767.40, one-half of the home's equity. Mr. Hofstad appealed that decision.

## STANDARD OF REVIEW

[¶ 7] When a matter is tried to the district court sitting without a jury, our standard of review is as follows:

Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Pi-*

*roschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005) (citing *Hansuld v. Lariat Diesel Corp.,* 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) and *Rennard v. Vollmar,* 977 P.2d 1277, 1279 (Wyo. 1999)).

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Piroschak,* ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004). Further,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted).

*Belden v. Thorkildsen,* 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo.2007).

*Garwood v. Garwood,* 2008 WY 129, ¶ 16, 194 P.3d 319, 325 (Wyo.2008).

## DISCUSSION

[¶ 8] It is widely accepted that, "if the instrument does not specify the shares of each co-tenant, it will be presumed that they take equal, undivided interests." *Bixler v. Oro Management,* 2004 WY 29, ¶ 19, 86 P.3d 843, 850 (Wyo.2004); see also 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 121 (1995). However, this presumption may be

rebutted by parol evidence, such as proof that the co-tenants contributed unequal amounts toward the purchase price of the property, and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price. *Bixler*, ¶ 19, 86 P.3d at 850 (citations omitted); see also *D.M. v. D.A.*, 885 P.2d 94, 96 (Alaska 1994). See *Lawrence v. Harvey*, 186 Mont. 314, 607 P.2d 551, 556–57 (1980).

[¶ 9] In the instant case, both parties agree that the Donegal property is held by them as tenants in common, inasmuch as the warranty deed did not specify a joint tenancy. Also, both parties agree with the district court's assessment that Mr. Hofstad contributed a substantially greater financial amount. Having established that the parties are tenants in common, but that Mr. Hofstad contributed substantially more money than Ms. Christie towards the property, we are faced with considering whether there is either evidence of a family relationship or evidence of donative intent on the part of Mr. Hofstad, or lack thereof.

[¶ 10] First, we consider the more difficult of the two questions: whether there is evidence of the existence of a family relationship. Mr. Hofstad argues that the district court improperly applied a family presumption to himself and Ms. Christie as an "unmarried couple." Mr. Hofstad insists that there is absolutely no family relationship between himself and Ms. Christie because they are not related and they are unmarried.[1] This is a matter of first impression in Wyoming, so we therefore look to other jurisdictions for guidance. A Missouri court stated as follows:

> The record is clear that for several years prior to his death Phillips and Margaret conducted their joint household in the same manner as if they were married. Such a relationship, even in the absence of sexual relations, gave rise to a "family relation" between Margaret and Phillips. *Wells v. Goff*, [361 Mo. 1188] 239 S.W.2d 301 (Mo.1951); *Manning v. Driscoll's Estate*, 174 S.W.2d 921 (Mo.App.1943). In

each of those cases a woman filed a claim against the estate of a male decedent for general housework performed for him during his lifetime. In each case, a "family relation" was found to exist.

*Johnston v. Estate of Phillips*, 706 S.W.2d 554, 556 (Mo.Ct.App.1986). Similarly, an Oregon court stated:

> [T]he legislature expressly defined "members of the same family" to mean "persons who are members of a family as parents, stepparents, grandparents, spouses, sons-in-law, daughters-in-law, brothers, sisters, children, stepchildren, adopted children or grandchildren." The definition expressly requires a family **relationship** between "persons." In particular, those persons must be members of a family "as" parents, stepparents, and so on. As the department correctly observes, a person cannot be a parent to himself, a spouse to himself, his own child, his own in-law, or have any of the other relationships specified in the statute. In keeping with that understanding of the legislature's intended meaning, the statute consistently uses plural rather than singular references (*e.g.,* corporate "officers," corporate "directors," and family "members"). See *Schuette v. Dept. of Revenue*, 326 Or. 213, 217–18, 951 P.2d 690 (1997) (the repeated use of a singular or plural noun form provides some indication of the legislature's intent). [Emphasis in original.]

> Finally, as the department correctly argues, even apart from the definition provided by the legislature, the term "family" is a "quintessential example" of a collective noun—*i.e.,* a noun that most naturally refers to a collection of things or persons as a unit. See *Webster's Third New Int'l Dictionary* 444 (unabridged ed. 2002) (defining "collective": "1 a *of a word or term:* indicating a number of persons or things considered as constituting one group or aggregate *family* and *flock* are *collective* words> b *of a noun or pronoun:* singular in form but sometimes or always plural in construction *family* in 'the family were proud' is a *collective* word>"). Various

---

1. Wyoming does not recognize common law marriage.

dictionary definitions of the word "family" similarly denote a group of individuals with a common affiliation or ancestry.

*Empl. Dep't v. Stock Secrets, Inc.*, 210 Or. App. 426, 150 P.3d 1090, 1092 (2007).

[¶ 11] Our own statute defines "family members" as follows:

(x) "Member of the minor's family" means the minor's parent, stepparent, spouse, grandparent, brother, sister, uncle or aunt, whether of whole or half blood or by adoption[.]

Wyo. Stat. Ann. § 34–13–114(a)(x) (Lexis-Nexis 2009).

[¶ 12] Even the United States Supreme Court recognizes that "family is a much broader term" than just parents and their children. *Moore v. City of East Cleveland*, 431 U.S. 494, 543, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The district court in this case echoed that sentiment when it stated in its conclusions of law that:

Mr. Hofstad and Ms. Christie cohabited and shared an intimate relationship which resulted in the birth of two children of that relationship, and they resided together with their children at the 1120 Donegal residence, and accordingly, there was a family relationship[.]

[¶ 13] Although the term "family relationship" is by no means absolute, we agree with the district court and Ms. Christie that in this case, the parties do share a family relationship, largely by way of their sharing two children. Even if Mr. Hofstad and Ms. Christie are not married, nor related by blood, that they lived together on and off for approximately ten years, all the while sharing an intimate relationship which resulted in the birth of their twins is evidence that a family relationship exists. Mr. Hofstad and Ms. Christie may never consider themselves "family," having never been married; however, their twin sons bind the four of them inextricably and forever, resulting in a family *relationship*. We disagree with Mr. Hofstad's argument that he does not share a family relationship with Ms. Christie.

[¶ 14] Next we turn to whether or not there was any evidence of donative intent on the part of Mr. Hofstad, who argues that not only did he not gift Ms. Christie one-half of the value of the Donegal home, but also that she should have been required to actually prove that a gift of one-half of the value of the home was given to her.

[¶ 15] Again, because this is an issue of first impression in Wyoming, we look to other states for direction. Other states have applied the "equal share presumption rule" to tenancies in common. In *D.M.*, the plaintiffs rebutted the general presumption of equal shares between tenants in common by demonstrating unequal contribution to equity in real property. There, the court found that this evidence created a presumption that they intended to share property in proportion to their respective contributions, and that was enough to rebut the general presumption of equal shares. *D.M.*, 885 P.2d at 97–98. The court held that if the parties intend to hold a tenancy in common in a particular proportion or if intent to determine proportion by a particular method can be discovered, this intent controls over the equal share presumption rule of cotenancy. *Id.*, at 97. Nonetheless, the court recognized that the common law presumptions concerning the respective interests of tenants in common where one contributes unequally to the purchase price are not applicable where the relationship between the parties indicates that one might have intended to make a gift to the other. *Id.*, at 97, n. 7 (citing *People v. Varel*, 351 Ill. 96, 184 N.E. 209, 211 (1932); *Wood v. Collins*, 812 P.2d 951, 956 (Alaska 1991)). In *Wood*, the court held that where the parties cohabitate and share an intimate relationship, it is more likely than otherwise that one party may contribute more of the acquisition or upkeep costs and still expect an equal share of the property. *Id.*, 812 P.2d at 956. The court in *Wood* went on to explain that the court must still find, however, that it was in fact the intent of the party making the excess contribution to confer it on the other party as a gift. *Id.*, at 957.

[¶ 16] Using the rules of cotenancy, when the conveyance is taken in both names, the parties would be presumed to share equally or to share based upon the amount contributed, if the contributions were traceable (rebuttable by donative intent or a family relation-

ship). *West v. Knowles,* 50 Wash.2d 311, 311 P.2d 689 (1957); A.C. Freeman on Cotenancy and Partition, 172 § 105 *Presumption of Relative Interests* (2nd ed. 1886). See, e.g., *Mayo v. Jones,* 8 Wash.App. 140, 505 P.2d 157 (Wash.App.1972); *Huls v. Huls,* 98 Ohio App. 509, 130 N.E.2d 412 (1954); *Williams v. Monzingo,* 235 Iowa 434, 16 N.W.2d 619 (Iowa 1944). Such rules of cotenancy could also result in requiring a showing of who paid various items, such as taxes, mortgage payments, or repairs. 2 Tiffany, Law of Real Property 282, § 461 (1939 and 2001 Cum. Supp.). The difficulty with the application of the rules of cotenancy is that their mechanical operation does not consider the nature of the relationship of the parties. While this may be appropriate for commercial investments, a mechanistic application of these rules will not often accurately reflect the expectations of the parties.

■ [¶ 17] In *Beal v. Beal,* 282 Or. 115, 577 P.2d 507 (1978), the Supreme Court of Oregon found that property accumulated during cohabitation should be divided by determining the express or implied intent of the parties. *Id.,* at 510. There, Barbara and Raymond Beal, recently divorced, purchased property together, listing themselves as husband and wife. Both contributed to the down payment, Barbara paying $500.00 more than Raymond. Barbara made the first monthly payment; Raymond made all subsequent payments. The parties lived together in the house and both contributed to the household. After two years, Barbara moved out. Raymond remained and made all monthly payments on the house. The court decided the property dispute should be resolved by looking at the parties' intent. Before Barbara moved out, the trial court found that the parties intended to pool their resources for their common benefit. Therefore, both parties were held to have an undivided interest in the property. *Id.* The court rejected the regular rules of cotenancy, which would have required the parties to share expenses based upon their ownership share, because these rules failed to account for the relationship between the parties. Instead, the court stated,

We believe a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. The difference is often only the sophistication of the parties. Thus, absent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon....

....

... we hold that courts, when dealing with the property disputes of a man and a woman who have been living together in a nonmarital domestic relationship, should distribute the property based upon the express or implied intent of those parties.

*Beal,* 577 P.2d at 510. We agree with *Beal* that property accumulated before separation should be divided by determining the express or implied intent of the parties. Here, the district court stated that

Mr. Hofstad's representation and promise that Ms. Christie would be a "co-owner" or "equal owner" of the 1120 Donegal residence, and that if they would get back together again he would put title to the property in both names, is evidence of donative intent on his part with respect to the equal undivided one-half interest in the property vested in Ms. Christie.

After reviewing the record, we agree with the district court. Among the evidence that leads us to this conclusion is that in 2005, after the parties were briefly separated, they became engaged, and Mr. Hofstad represented to Ms. Christie that he would "change," they would be married within three months, that he would undergo counseling, and that Ms. Christie would be a co-owner or equal owner in the Donegal home. Furthermore, as conclusive evidence of Mr. Hofstad's intent, he put Ms. Christie's name on the Donegal deed after they rekindled their relationship. He initiated the purchase of the Donegal property of his own volition, but switched course after rekindling his relationship with Ms. Christie. We find this to be

persuasive evidence of Mr. Hofstad's donative intent.

### CONCLUSION

[¶ 18] The district court's judgment partitioning equally a home the parties owned as tenants in common is affirmed. Given the parties' children and living situation over the course of the past ten years, a family relationship existed. Furthermore, given the circumstances surrounding the purchase of 1120 Donegal and the parties' reconciliation, evidence of donative intent existed. We affirm the district court.