BOOMGAARDEN, Justice.
*849 [¶1] Appellant, Rhonda Gallagher, appeals from the district court's order partitioning a vacant lot that she and Appellee, Curtis Townsend, own as joint tenants with rights of survivorship. Ms. Gallagher contends that the district court improperly partitioned the property. She also contends that the district court erred in determining the amount of property taxes Mr. Townsend paid. We reverse and remand.
ISSUES
[¶2] Ms. Gallagher raises two issues, which we restate as follows:
1. Did the district court err when it partitioned the property?
2. Did the district court err when it determined Mr. Townsend paid $4,241.53 in property taxes?
FACTS
[¶3] The parties cohabitated from approximately October 2007 until March 2009 and share a child together. In 2008, Mr. Townsend purchased a vacant lot for $25,014.20 with his own funds. The warranty deed conveyed the property to the parties as joint tenants with rights of survivorship. The parties each paid property taxes through the years-Ms. Gallagher paid $510 in property taxes and Mr. Townsend paid the remaining property taxes.[1] After Ms. Gallagher moved to Colorado in July 2013, Mr. Townsend invoiced Ms. Gallagher for maintenance costs as they arose, but she did not pay the invoices.
[¶4] In August 2017, Ms. Gallagher filed suit seeking partition of the lot. The district court appointed partition commissioners, who determined that the property could not be partitioned in kind without manifest injury to its value and should be sold. The district court agreed, ordered the sale of the lot if neither party elected to purchase the other party's share, and valued the property at $33,500. Although the district court determined that each party owned a one-half interest in the lot, it ordered that Mr. Townsend be paid the first $25,017.20[2] -the amount he paid to purchase the property-from the sale or election proceeds and that any excess proceeds be divided equally between the parties. The district court determined that an equitable division of the proceeds was proper because "Mr. Townsend paid the entire purchase price, maintained[ ] the property, and paid the majority of the expenses associated with the property during the parties' short relationship." Ms. Gallagher timely appealed.
STANDARD OF REVIEW
[¶5] "Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a de novo standard for the conclusions of law." Hofstad v. Christie , 2010 WY 134, ¶ 7, 240 P.3d 816, 818 (Wyo. 2010) (citation omitted).
[¶6] "Requests for equitable relief are matters over which the district court exercises broad discretion." Jacoby v. Jacoby , 2004 WY 140, ¶ 7, 100 P.3d 852, 855 (Wyo. 2004) (citation omitted).
In determining whether there has been an abuse of discretion, we focus on the "reasonableness of the choice made by the trial court." If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious.
Id. (citations omitted). However, "[e]ven when acting in equity, the district court is not free simply to do what it thinks is fair." Id. ¶ 10, 100 P.3d at 855. "Equitable discretion *850 may be limited by statute." McCarthy v. Lippitt , 150 Ohio App. 3d 367, 381, 781 N.E.2d 1023, 1033 (2002) (citation omitted).
DISCUSSION
I. Did the district court err when it partitioned the property?
[¶7] Partition is a civil action; the rules of equity supplement, but do not substitute for, the statutory procedures. Platt v. Platt , 2011 WY 155, ¶ 18, 264 P.3d 804, 808-09 (Wyo. 2011) (summarizing the court's lengthy discussion of partitions in Field v. Leiter , 16 Wyo. 1, 90 P. 378 (Wyo. 1907) ). Wyoming Statutes §§ 1-32-101 et seq. set forth the procedures for partition of real property. Martin v. DeWitt , 2014 WY 112, ¶ 22, 334 P.3d 123, 129 (Wyo. 2014) (citation omitted). When, as here, property cannot be partitioned in kind without manifest injury to its value, the statutes provide that "[t]he money or securities arising from a sale of or an election to take the estate shall be distributed and paid by order of the court to the parties entitled thereto, in lieu of their respective parts and proportions of the estate and according to their just rights therein." Wyo. Stat. Ann. § 1-32-114 (LexisNexis 2017).
[¶8] We first review whether the district court erred in determining Ms. Gallagher's and Mr. Townsend's respective shares in the property. We then review whether the district court properly distributed the sale or election to take proceeds "according to their just rights therein."[3] Id.
A. The parties' respective shares.
[¶9] "In a suit for partition, the court must first determine the respective shares which the parties hold in the property, before the property can be divided." 2 Tiffany Real Property § 479.1 (3d ed.), (database updated Sept. 2018); see also Wyo. Stat. Ann. § 1-32-114 (money "from a sale of or an election to take the estate shall be distributed and paid" to the parties, "in lieu of their respective parts and proportions"). In Hofstad v. Christie , we addressed how courts should determine the shares of unmarried parties who hold property as tenants in common when the instrument does not specify their shares. Hofstad , ¶ 8, 240 P.3d at 818-19. In reviewing the district court's decision to award Ms. Christie one-half of the equity in the home at issue, we applied the widely accepted rule "that, 'if the instrument does not specify the shares of each co-tenant, it will be presumed that they take equal, undivided interests.' " Id. ¶ 8, 240 P.3d at 818 (quoting Bixler v. Oro Management , 2004 WY 29, ¶ 19, 86 P.3d 843, 850 (Wyo. 2004) ). We also applied the rule regarding what parol evidence may be presented to rebut the presumption. Id. (citing Bixler , ¶ 19, 86 P.3d at 850 ). Such evidence may include "proof that the co-tenants contributed unequal amounts toward the purchase price of the property, and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price." Id. ¶ 8, 240 P.3d at 819.
[¶10] The district court applied the Hofstad presumption, but expressed some uncertainty regarding whether the rules set forth in Hofstad apply when the parties hold property as joint tenants with rights of survivorship, rather than as tenants in common. Because unity of interest[4] is not necessary to create a joint tenancy, Oatts v. Jorgenson , 821 P.2d 108, 114 (Wyo. 1991) (citation omitted), we conclude the district court correctly applied Hofstad's rebuttable presumption of equal shares to this partition of property held in joint tenancy. See also *851 20 Am. Jur. 2d Cotenancy and Joint Ownership § 116, (database updated May 2019) ("A rebuttable presumption of equal shares applies as well to property held in joint tenancy, [a] party challenging the presumption that property held in joint tenancy is equally owned has the burden of proof."); 48A C.J.S. Joint Tenancy § 28, (database updated June 2019) ("The shares or interests of joint tenants are presumed to be equal although this presumption of equal ownership is rebuttable.").
[¶11] Applying Hofstad , the district court determined that "each party owns an undivided, one-half interest in the property," because Mr. Townsend had failed to rebut the presumption of equal shares. The district court based its determination on the parties' admission that "they were in a dating type relationship which produced a child[,]" and evidence that they "purchased the property with the intent to develop it jointly." Mr. Townsend attempts to distinguish Hofstad , but more generally relies on broad equitable powers he asserts the district court properly exercised to distribute the proceeds from the partitioned property. Neither party argued, and we found nothing in the record to suggest, that the district court's findings of fact are clearly erroneous, or that the district court's corresponding conclusion that Mr. Townsend failed to rebut the presumption of equal shares constitutes legal error. We therefore uphold the district court's conclusion that "each party owns an undivided, one-half interest in the property."
B. Distribution "according to their just rights therein."
[¶12] The district court expressly relied on the phrase "according to their just rights therein[,]" in Wyoming Statute § 1-32-114, to divide the property's value equitably, rather than evenly, considering "the party through whom the property was acquired" and other factors that apply to fair and equitable division of marital property. For the reasons provided below, we conclude that Wyoming Statute § 1-32-114 limits, rather than sanctions, a district court's equitable powers to distribute partition proceeds after the court has determined the parties' respective shares in the property.
[¶13] We have never interpreted Wyoming Statute § 1-32-114. In doing so now, we again look to Ohio law for guidance, as Wyoming's partition statutes were modeled after Ohio's Code. Platt , ¶ 19, 264 P.3d at 809 ; Field , 90 P. at 387. In particular, we note that the Ohio Court of Appeals interpreted an almost identical provision of the Ohio Code in McCarthy , 150 Ohio App. 3d 367, 781 N.E.2d 1023, to limit a trial court's equitable power to distribute proceeds after the trial court had determined the parties' interests in property.[5]
[¶14] The relevant facts in McCarthy are straightforward. In 1995, Laverne and Darlene Winland sold their 55-acre parcel of property to Mr. and Mrs. Lippitt, as trustees for the L.L. Trust, and to Darrell Gamiere. McCarthy , 150 Ohio App. 3d at 371, 781 N.E.2d at 1026. The Lippitts and Mr. Gamiere each held a one-half interest in the property. Id. , 150 Ohio App. 3d at 372, 781 N.E.2d at 1026. In 2000, Mr. Gamiere transferred his interest to Mr. and Mrs. McCarthy for $10,000. Id. Later that year, the Lippitts transferred the interest they held as trustees to themselves as individuals. Id. The McCarthys eventually filed a partition action. Id. The trial court found that the McCarthys owned a one-half undivided interest in the property and ordered that it be sold. Id. , 150 Ohio App. 3d at 372-73, 781 N.E.2d at 1027. It awarded the McCarthys $10,000 from any proceeds and ordered any excess proceeds go to the Lippitts. Id. , 150 Ohio App. 3d at 373, 781 N.E.2d at 1027.
[¶15] On appeal, the McCarthys argued that they should receive a proportional share of any excess proceeds, rather than a lump-sum payment of $10,000. Id. , 150 Ohio App. 3d at 380, 781 N.E.2d at 1032. To support their argument, they directed the court to Ohio Revised Code § 5307.14. Id. The statute stated: "[t]he money or securities arising from a sale of, or an election to take an estate, shall be distributed and paid, by order of the court of common pleas, to the parties entitled thereto, in lieu of their respective *852 parts and proportions of the estate, according to their rights therein." Id. (emphasis omitted). The McCarthys contended that, as one-half owners of the property, they should also receive one-half of any proceeds remaining after payment of outstanding debts and liens on the property. Id. , 150 Ohio App. 3d at 380, 781 N.E.2d at 1032-33. The Lippitts countered that partition proceedings are equitable and are reviewed for abuse of discretion. Id. , 150 Ohio App. 3d at 380, 781 N.E.2d at 1033. They asserted that no statutory law or case law required partition proceeds to be divided proportionally. Id.
[¶16] The appellate court agreed with the McCarthys, explaining that Ohio Revised Code § 5307.14 requires proceeds from a partition to be "distributed proportionately where there are proportional interests are at stake," such as a one-half interest. Id. , 150 Ohio App. 3d at 381, 781 N.E.2d at 1033-34 (citing 4 Thompson on Real Property § 1829 (1979) ("The proceeds from a [partition] sale are treated as if they were still land and should be divided according to the respective interests of the parties in the land.")). "After deducting all expenses, liens, and equitable adjustments, the cotenants continue[d] to own any remaining funds in the same proportion they owned the real property."[6] Id. , 150 Ohio App. 3d at 381, 781 N.E.2d at 1034. The trial court therefore should have respected the proportional interests of the parties in the partition proceedings. Id. Instead, the trial court effectively divested the McCarthys of their proportional interest in the excess proceeds. Id. , 150 Ohio App. 3d at 371, 781 N.E.2d at 1026.
[¶17] Prior to its amendment in 2010, Ohio Revised Code § 5307.14[7] was nearly identical to Wyoming Statute § 1-32-114, which provides:
The money or securities arising from a sale of or an election to take the estate shall be distributed and paid by order of the court to the parties entitled thereto, in lieu of their respective parts and proportions of the estate and according to their just rights therein.
Wyo. Stat. Ann. § 1-32-114.
[¶18] Any differences in statutory language are insignificant. The Ohio statute referred to an "order of the court of common pleas" rather than "the court," and it included more commas than the Wyoming statute. Compare McCarthy , 150 Ohio App. 3d at 380, 781 N.E.2d at 1032, with Wyo. Stat. Ann. § 1-32-114. The Ohio statute also referred to the parties' "rights therein," where the Wyoming *853 statute refers to the parties' "just" rights therein. Id.
[¶19] Although Black's Law Dictionary does not define "just rights," it defines the word "just" to mean "[l]egally right; lawful; equitable." Black's Law Dictionary 1033 (11th ed. 2019). A "right" is "[s]omething that is due to a person by just claim, legal guarantee, or moral principle." Black's Law Dictionary 1581 (11th ed. 2019). The word "just" may mean "equitable"; however, "just rights" are not synonymous with "equitable rights." An "equitable right" is "[a] right cognizable within a court of equity." Id. Several cases support the conclusion that the word "just" does not render the two statutes substantively different. See Mayland v. Flitner , 2001 WY 69, ¶¶ 33-34, 28 P.3d 838, 849-50 (Wyo. 2001) (explaining that there is no difference in meaning between "due compensation" and "just compensation"); Ryerson v. Boorman , 8 N.J. Eq. 701, 705 (N.J. 1849) (reflecting that "Due rights means just rights-legal rights"); Whitwell v. Warner , 20 Vt. 425, 445 (Vt. 1848) (noting that "we must not forget, that all just rights are entitled to a fair consideration in a court of justice").
[¶20] We interpret the plain meaning of the phrase "according to their just rights therein," in Wyoming Statute § 1-32-114, the same as the Ohio Court of Appeals interpreted the plain meaning of the phrase "according to their rights therein," in Ohio Revised Code § 5307.14 -to require a court to respect the parties' proportional interests in the property subject to partition, and to thereby limit a court's equitable discretion in a partition action. When the district court interpreted Wyoming Statute § 1-32-114 to allow it to "equitably divide the proceeds from the sale or election of one [of] the parties," regardless of its determination that each party held an undivided one-half interest in the property, the district court erroneously divested Ms. Gallagher of her one-half interest.[8]
[¶21] We considered Mr. Townsend's argument that the district court's decision is analogous to and supported by the Mississippi Court of Appeals' decision in Jones , 95 So. 3d 751. In Jones , Mr. Graphia and Ms. Jones "were romantically involved, but never married." Jones , 95 So. 3d at 752. In 2010, they bought a house as joint tenants with rights of survivorship. Id. Mr. Graphia paid the entire purchase price of $274,000 for the home and Ms. Jones paid nothing. Id. at 753. When their relationship ended, Mr. Graphia filed to partition the property. Id. Following trial, the chancellor decided that he could adjust the equities between the parties under Mississippi Code Annotated § 11-21-9 (Rev. 2004).[9] Id. He also applied Mississippi Code Annotated § 11-21-33 (Rev. 2004),[10] which addresses owelty.[11] Id. The chancellor awarded *854 Mr. Graphia $274,000-the amount he paid to purchase the home-and he awarded Ms. Jones nothing. Id.
[¶22] Mr. Townsend's reliance on Jones is misplaced for three reasons. First, Wyoming's partition statutes are modeled after the Ohio Code, not the Mississippi Code. Platt , ¶ 19, 264 P.3d at 809 ; Field , 90 P. at 387. That fact is particularly important because the chancellor relied on express statutory authority to determine title and adjust equities to support his decision. Jones , 95 So.3d at 753, 755.
[¶23] Second, the rationale of the dissenting justices in Jones is more persuasive and in line with our interpretation of Wyoming Statute § 1-32-114 than the Jones majority. Justice Carlton concluded that the majority allowed the trial court to deviate from the statutory procedure. Id. at 755. In his view, the only equities the chancellor should have adjusted were those that arose out of cancellation of joint title, such as rents, improvements to the property, payment of taxes, and costs of maintenance and upkeep. Id. at 756. The chancellor should not have considered the payment of the original purchase price in adjusting the equities because the original purchase price related to formation of the joint tenancy, not its cancellation. Id. In his dissent, Justice Maxwell reasoned that "instead of partitioning the property, the chancellor essentially performed an equitable distribution of the house, justifying his decision to award one joint tenant all the proceeds of a partition sale based primarily on the 'putative-spouse doctrine.' "[12] Id. In his view, although Mississippi Code Annotated § 11-21-9 allowed the chancellor "to use a cotenant's otherwise equal share of proceeds to offset what he owes his cotenant for rent, improvement costs, taxes, or other similar debts," the statute did not allow the chancellor "to disregard title and to divide sale proceeds based solely on equity." Id. at 757 (emphasis in original).
[¶24] Third, the chancellor did not determine the interests of the parties before dividing the partition proceeds. Id. at 752-55. The chancellor's approach was therefore different from the approach instructed by the plain language of Wyoming Statute § 1-32-114.
[¶25] The district court followed Wyoming law by first determining the parties' respective interests in the property. The instrument of title (the deed declaring them joint tenants) did not specify each party's interest, so the court properly presumed the parties took "equal, undivided interests." It also properly determined that Mr. Townsend did not rebut the presumption of equal shares under Hofstad , ¶ 8, 240 P.3d at 818-19. After deciding the parties' interests, the district court erred by exercising its equitable powers to divest Ms. Gallagher of her interest in the property. Once it decided the parties were entitled to equal shares, the fact that Mr. Townsend provided the entire purchase price was no longer relevant.
[¶26] The district court was, however, authorized to make a final accounting consistent with a joint tenant's right to proportionate reimbursement for necessary expenditures made in protection of the joint property. See 59A Am. Jur. 2d Partition § 137 (database updated May 2019) ("an accounting of income and expenses of the property sought to be partitioned ... is incident to a suit for partition"); 48A C.J.S. Joint Tenancy § 26, (database updated June 2019) ("[a] joint tenant may also be entitled to proportionate reimbursement for necessary expenditures made in protection of the joint property, such as the payment of the mortgage or taxes, or for the removal of liens"); see also Hackett v. Linch , 57 Wyo. 289, 116 P.2d 868, 870-72 (Wyo. 1941) (discussing various types of claims *855 for reimbursement out of partition funds). Those adjustments may address, for example, disproportionate payment of property taxes and maintenance costs. See McCarthy , 150 Ohio App. 3d at 379, 781 N.E.2d at 1032. They may not include the amount either party contributed to purchase the property because the purchase price does not arise out of termination of the joint tenancy or affect the proportional interests of the parties. See 2 Tiffany Real Property § 428 (3d ed.), (database updated Sept. 2018) ("Upon partition of property held in joint tenancy, all equities growing out of that relationship should be considered. However, contributions of the parties to the property prior to the joint tenancy are not equities growing out of that relationship."); Schippacasse , 17 Ohio Law Abs. at 189. If the court determines an adjustment is warranted, then it should account by deducting the amount owed from the appropriate party's share and adding that amount to the other party's share. 59A Am. Jur. 2d Partition § 137, (database updated May 2019).
[¶27] In its partition order, the district court expressed concern that Mr. Townsend paid more in property taxes than Ms. Gallagher and has maintained the property. To account for such matters, the district court may reduce the proceeds that Ms. Gallagher would receive in order to reimburse Mr. Townsend for any disproportionate amount of money he paid for property taxes and maintenance costs. We therefore remand for the limited purpose of determining whether Ms. Gallagher's share of the sale or election to take proceeds should be reduced by Mr. Townsend's disproportionate payment of property taxes and maintenance costs and, if so, in what amount.
II. Is the district court's finding that Mr. Townsend paid $4,251.53 in property taxes clearly erroneous?
[¶28] We agree with the parties that the district court's finding that Mr. Townsend paid $4,251.53 in property taxes is clearly erroneous. The district court found that Ms. Gallagher paid $510 in property taxes. Neither party contests the court's finding regarding the amount of property taxes she paid. Ms. Gallagher points out, and Mr. Townsend does not dispute, that the total amount of property taxes paid on the property was $1,777.44. Assuming that amount is correct, since Mr. Townsend appears to have paid all of the remaining property taxes, he could not have paid more than $1,267.44-the difference between $1,777.44 and $510.[13]
CONCLUSION
[¶29] The district court erred when it ordered that "Mr. Townsend is entitled to the first $25,017.20 in proceeds" from sale of the property after determining that "each party owns an undivided, one-half interest in the property." The district court may reduce Ms. Gallagher's fifty-percent share of proceeds by any disproportionate amount of property taxes and maintenance costs paid by Mr. Townsend. The district court's finding that "Mr. Townsend has paid $4,241.53 in property taxes" is clearly erroneous. We reverse and remand for the district court to issue a new Order on Partition of Property consistent with this opinion.

The district court found that Mr. Townsend paid $4,241.53 in property taxes, but both parties acknowledge that amount is in error. We address this error below.

Although the court found that Mr. Townsend paid $25,014.20 for the property, it ordered that he receive the first $25,017.20 from any sale, attributing that as the amount he paid to purchase the property. Mr. Townsend states that it is unknown why the court awarded him $3 more than the purchase price. The district court may wish to address this discrepancy on remand.

We note that if either Ms. Gallagher or Mr. Townsend should elect to purchase the other party's share of the property under Wyoming Statute § 1-32-109, the property shall be adjudged to the electing party on paying the other party their "proportion of the appraised value according to their respective rights" rather than "their just rights therein." Compare Wyo. Stat. Ann. § 1-32-109 (LexisNexis 2017), with Wyo. Stat. Ann. § 1-32-114. For the same reasons stated below at ¶¶ 18-20, this difference in statutory language is not substantive.

" 'Unity of interest'... means that the joint tenants' shares are all equal and the duration and quality, legal or equitable, of their estates are the same." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 5, (database updated May 2019).

We previously found McCarthy persuasive authority on a different matter of first impression: modification of a partition commissioners' report. Platt , ¶¶ 19-20, 264 P.3d at 809-11.

There is not a common definition of "equitable adjustments" pertaining to partition proceedings. However, the term is commonly used to refer to adjustment of accounts and claims between parties. See 2 Tiffany Real Property § 479.1 (3d ed.), (Sept. 2018 update) (addressing "[r]elief incidental to partition; adjustment of claims and equities between parties"); but see Ramer v. Smith , 896 N.E.2d 563, 569 (Ind. Ct. App. 2008) (using the term to refer to equitable adjustment of shares). In Ohio, the term is used to refer to adjustments to the final awards that account for a party's disproportionate payment of taxes and insurance, as well as costs associated with maintenance and improvement of the property. See McCarthy , 150 Ohio App. 3d at 379, 781 N.E.2d at 1032 ; Sword v. Sword , 86 Ohio App. 3d 161, 165, 620 N.E.2d 199, 202 (Ohio Ct. App. 1993) ; Edwards v. Edwards , 107 Ohio App. 169, 173-74, 157 N.E.2d 454, 458-59 (Ohio Ct. App. 1958) ; McCarthy v. Lippitt , 2003-Ohio-5157, ¶¶ 24-28, 2003 WL 22232107, *5 (Ohio Ct. App. 2003). It is not used to refer to adjustments based on the amount of money a party paid to purchase the property. See Schippacasse v. Brandt , 17 Ohio Law Abs. 188, 189 (Ohio Ct. App. 1934) ("[i]t is our understanding that only those equities arising from the joint ownership of the common property may be adjusted by an accounting in a partition suit"); see also Jones v. Graphia , 95 So.3d 751, 755 (Miss.App. 2012) (Carlton, J., dissenting) (noting that the equities that arise out of cancellation of joint title include rents, improvements to the property, payment of taxes, and costs of maintenance and upkeep, but not the original purchase price because the original purchase price relates to formation of the joint tenancy).

The version of Ohio Revised Code § 5307.14 the court evaluated in McCarthy provided:
The money or securities arising from a sale of, or an election to take an estate, shall be distributed and paid, by order of the court of common pleas, to the parties entitled thereto, in lieu of their respective parts and proportions of the estate, according to their rights therein.
McCarthy , 150 Ohio App. 3d at 380, 781 N.E.2d at 1032 (emphasis omitted). The Ohio Legislature amended § 5307.14 effective September 13, 2010 to, among other things, codify the McCarthy court's interpretation. See Ohio Rev. Code Ann. § 5307.14 (LexisNexis 2019) ; 2010 Ohio Laws File 45 (Sub. H.B. 292).

Assuming the property sells for the amount the court determined it is worth-$33,500-Mr. Townsend would receive $25,017.20 for his initial investment plus half of the remaining proceeds, $4,241.40. In other words, he would receive 87% of the property interest. Ms. Gallagher would receive $4,241.40-only 13% of the property interest-far less than her 50% ownership interest.

Mississippi Code Annotated § 11-21-9, unlike Wyoming Statute § 1-32-114, provides:
If the title of the plaintiffs seeking partition or sale of land for a division shall be controverted, it shall not be necessary for the court to dismiss the complaint, but the question of title shall be tried and determined in the suit and the court shall have power to determine all questions of title, and to remove all clouds upon the title, if any, of the lands whereof partition is sought and to apportion encumbrances, if partition be made of land encumbered and it be deemed proper to do so. The court may adjust the equities between and determine all claims of the several cotenants, as well as the equities and claims of encumbrancers.
Miss. Code Ann. § 11-21-9 (LexisNexis 2019) (emphasis added). The statute has not been amended since 1991. Id.

Mississippi Code Annotated § 11-21-33 provides: "[i]n all cases where owelty is allowed, it shall be a lien upon the share of the party charged therewith, which shall be superior to all other liens made or suffered by such party." Miss. Code Ann. § 11-21-33 (LexisNexis 2019). The statute has not been amended since 1942. Id. Wyoming has no such owelty statute.

"Owelty" is a common law doctrine where one party pays a sum of money to another when real property subject to partition in kind cannot be divided into exactly equal shares. Platt v. Platt , ¶ 49, 337 P.3d 431, 443 (Wyo. 2014) (citation omitted). Owelty helps achieve an equitable division of the real property. Id. ¶¶ 49-50, 337 P.3d at 443 ; see also Black's Law Dictionary 1331 (11th ed. 2019) (defining "owelty" as "1. Equality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property. 2. The sum of money so paid.").

A "putative marriage" is "[a] marriage in which one spouse believes in good faith that the two are married, but for some technical reason they are not formally married (as when the ceremonial official was not authorized to perform a marriage)." Black's Law Dictionary 1165 (11th ed. 2019). "The legal rule by which putative marriages exist is sometimes referred to as the putative-spouse doctrine ." Id. (emphasis in original).

Although Ms. Gallagher identifies the total amount of property taxes paid as $1,777.44, our review of the exhibit she relies on suggests that the total amount of property taxes paid, including penalties and interest, was $1,814.31. Consequently, Mr. Townsend would have paid $1,304.31 in property taxes.